McKinney, J.,
delivered the opinion of the Court.
At the June Term, 1860, of the Circuit Court of Lawrence county, the plaintiff in error was arraigned upon an indictment for murder in the first degree, and put upon his trial. Much time was spent in the attempt to select a jury. Some seven hundred jurors were summoned and tried by the Court. Out of the whole number, but eight jurors were elected. Nine challenges were made by the prisoner, and seven by the State. All the others were found by the Court, incompetent.
In this state of things, “ the Court being of opinion that a sufficient number of competent jurors, to make up *346 a jury in the case, could not be procured in the county of Lawrence,” and consequently, that a fair and impartial trial could not be had in said county, ordered the venue to be changed. To this the prisoner objected, and insisted upon a trial in said county. The prisoner, being called upon by the Court to elect to which county the venue should be changed, elected Maury county.
At the September Term of the Circuit Court of Maury, 1860, the prisoner was tried and convicted of murder in the second degree, and sentenced to fifteen years confinement in the penitentiary, from which judgment he appealed in error, to this Court.
The error assigned is, that the Court did not possess lawful power to change the venue, against the consent of the prisoner. The Code provides, (sec. 5195,) that “when the Court, in any criminal ease, upon an attempt to select or impannel a jury for the trial of the defendant, is of opinion that a fair and impartial trial cannot be had in the county where the cause is then pending, the venue may be changed without the prisoner’s consent.”
This provision of the Code, it is insisted, is in violation of the 9th section of the first article of the Constitution of this State, which declares “ that in all criminal prosecutions, the accused hath a right * * * to a speedy public trial, by an impartial jury of the county * * in which the crime shall have been committed.”
This question is, for the first time, directly presented for our determination, and we have bestowed upon it a careful consideration; the result of which is, that this provision of the Code is inconsistent with the Constitution, in our judgment.
The argument, founded upon the supposed absurd and *347 mischievous consequences to arise out of this determination is plausible; but the force of a direct, explicit, and unequivocal constitutional principle, is not to be avoided by arguments of this sort.
It will not be claimed by any one, that a provision of the Constitution is more flexible in its nature than an Act of the Legislature. To put them on the same footing, in this respect, is, perhaps, a liberal concession to the argument opposed to our conclusion. Now, what is the doctrine in regard to the interpretation of Statutes, as maintained _ by the most approved authorities? Blackstone says, (1 vol. Com., 91,) the Acts of Parliament that are impossible to be . performed are of no validity; and if there arise out of them, collaterally, any absurd consequences, manifestly contradictory to common reason, they are, with regard to those collateral consequences, void. But, he adds, t:if Parliament will positively enact a thing to be done which is unreasonable, I know of no power, in the ordinary ' forms of the Constitution, that is vested with authority to control it.” Christian, in his note upon this passage, questions, and, perhaps, justly, its correctness, in part. He says: “If an Act of' Parliament is clearly and unequivocally expressed, I conceive it is neither void in its direct nor collateral consequences, however absurd and unreasonable they may appear. If the expression will admit of doubt, it will not then be presumed that that construction can be agreeable to the intention of the Legislature, the consequences of which are unreasonable; but where the signification of a Statute is manifest, no authority less than that of Parliament can restrain its operation.”
In Duannes on Statutes, 702-3, it is said: “Where *348 tbe Legislature has used words of plain and definite import, it would be very dangerous to put upon them a construction which would amount to holding that the Legislature did not mean what it had expressed.” In a recent American Work on Statutory Law, it is said that the intention of the Legislature is to be learned from the words he has used ; * * * and if that intention is expressed in a manner devoid of contradiction and ambiguity, there is no room for interpretation or construction, and the Judges are not at liberty, on considerations of policy, or hardship, to depart from the words of the Statute; that they have no right to make exceptions, or insert qualifications; however, abstract justice, or the justice of the particular case, may seem to require it: Sedgwick on Stat. and Com. Law, 295.
It is obvious, that to do so, would be to transcend the boundary separating judicial construction from judicial legislation. It is a recognized principle of exposition, too, that it is not allowable to interpret what has no need of interpretation.
Now, let these principles be applied to the plain, positive, unequivocal provision of the Constitution, “that the accused hath a right to a speedy public trial, by an impartial jury of the county in which the crime shall have been committed.” What is there in this simple provision to interpret, or construct? Is it possible to raise a doubt as to the intention, or proper meaning, of the clause? Our language admits of no more explicit or precise expression of intention. If it were even possible to cavil as to the phrase, “speedy public trial,” or “impartial jury,” it is certainly impossible to do so as re *349 gards the concluding words, “jury of the county in which the crime shall have been committed.”
What is the simple import of the provision of the Code under consideration? It is, that, under circumstances, the Court may deny the accused this constitutional right, and force him, against his will, to be tried by a jury of a different county. And upon what reason is it attempted to vindicate this enactment? This, merely, that, otherwise, the absurd and unreasonable consequence will, in some cases, follow, that the accused can never be tried at all. This is by no. means, either a necessary or logical sequence. But, if it were admitted to be so, the easy and conclusive answer is, thus the fundamental law is written.
The practical inconvenience and mischievous consequences, which may occasionally arise out of a strict adherence to the Constitution, of which the present case is an illustration, may be an all-sufficient reason to induce the Legislature to modify the existing law, as regards the necessary qualifications of jurors in criminal cases of the higher grades, but it can be no reason for a plain violation of the Constitution. For this, no possible consequences, however apparently unreasonable or absurd, can be admitted to afford sufficient reason.
The provision of the Constitution is, in itself, a wise, just and necessary safeguard to the rights and’ liberty of the accused, Like all general rules and principles of law, it may, in exceptional cases, be attended with inconvenient consequences in its practical operations; but these must necessarily be submitted to, for the sake of the general salutory effect of the principle.
In the existing organization of our judicial system, *350 the clause of the Constitution in question is to be read, omitting the word “district,” which was used in the original Constitution of 1796, with reference to the district system then existing, but which was abolished in 1809.
The Act of 1827 was free from any constitutional objection, because it required the assent of the prisoner to a change of the venue. It will scarcely be denied that, under ordinary circumstances, a prisoner who is suijuris, may waive this as well as any other legal right, if done advisedly. And although the provision of the Code, as it stands -upon the Statute book, is inoperative and void, because it assumes to confer upon the Court the exercise of a power not allowed by the Constitution, yet, we suppose, the consent of the prisoner to the change of venue would obviate all objection.
The judgment will be reversed — the order for the change of venue vacated, and the case remanded to the Circuit Court of Lawrence for trial.
Judgment reversed.