STATE OF MINNESOTA *vs.* JOSEPH KEMP.

July 23, 1885.

**Justice of the Peace — Criminal Jurisdiction in City of Rochester.**
By the charter of the city of Rochester, in the county of Olmsted, the city justice is invested with exclusive jurisdiction to hear all complaints. and conduct all examinations and trials in criminal cases within the city, cognizable before a justice of the peace, subject to certain exceptions not here important. This gives him exclusive jurisdiction, subject to the exceptions mentioned, to act *within the city* in hearing complaints and conducting examinations and trials in criminal cases arising *within his county,* such as are ordinarily cognizable by a justice of the peace.

**Same—Constitution—"Jury of the County."**—An act of the legislature provides for the selection, from the qualified electors of the city exclusively, of a list of persons to serve as jurors before said city justice. *Held,* that a jury impanelled from such list to try (before said justice) an offence against the general laws of the state, committed in Olmsted county, is a *jury of the county* where the offence was committed, within the meaning of section 6, article 1, of our state constitution.

Defendant was arraigned before the city justice of the city of Rochester, in Olmsted county, on a complaint for selling intoxicating liquor to an habitual drunkard. He pleaded not guilty, and thereupon moved to dismiss the complaint for want of jurisdiction of the court over the offence charged. The motion was denied, and defendant demanded a jury trial. Thereupon a jury was summoned and impanelled in the manner provided by the city charter, (Sp. Laws 1878, p. 508,) from the qualified electors of the city. The defendant objected to the jury thus obtained, because not impanelled as prescribed by the constitution. His objection was overruled, and he was tried, convicted and sentenced. He appealed, upon questions of law alone, to the district court for Olmsted county, where the cause

was heard by *Start*, J., and the judgment of the justice was affirmed. Upon the defendant's request, the case was then reported to this court, pursuant to Gen. St. 1878, *c.* 117, § 11.

*Chas. C. Willson*, for appellant.

*W. Logan Brackenridge* and *Frank B. Kellogg*, for the State.

BERRY, J. By the charter of the city of Rochester, (enacted in 1867,) the city justice is invested with the exclusive jurisdiction "to hear all complaints and conduct all examinations and trials in criminal cases within the city, cognizable before a justice" of the peace, subject to certain exceptions not important to be specified here. As we understand it, this gives him exclusive jurisdiction, subject to the exceptions mentioned, to act *within the city* in hearing complaints and conducting examinations and trials in criminal cases arising *within the county*, such as are ordinarily cognizable by a justice of the peace.

A law passed in 1878 provides for the selection, from the qualified electors of the city exclusively, of a list of persons to serve as jurors before said justice. The question is whether, upon the trial of an offence against the general laws of the state, a jury impanelled from such list is constitutional? The defendant says not, and relies upon section 6, article 1, of our state constitution, which provides that "in all criminal prosecutions the accused shall enjoy the right to a trial by a jury of the county or district wherein the crime shall have been committed, which county or district shall have been previously ascertained by law."

We perceive no reason why the word "district" may not properly be held to designate an area larger or smaller than a county. The state of facts appearing in *State* v. *Gut*, 13 Minn. 315, (341,) presents an instance of a "district" embracing several counties: and a city, although but part of a county, might by proper legislation be erected into a district by itself. And the meaning of the constitutional provision we take to be that the accused shall have (1) the right of trial by a jury of the county where his crime was committed, if the criminal jurisdiction of the court before which he is being tried embraces and is confined to crimes committed anywhere in the county; and (2) a right of trial by a jury of the *district* where his crime was committed, whether such district be larger or smaller than a county, when the

criminal jurisdiction of the court before which he is being tried embraces and is confined to crimes committed anywhere in such district; that is to say, the jury must come from the jurisdictional territory of the court, whether it be a county or district. The jurisdictional territory of the city justice of Rochester is Olmsted county; that is to say, he has jurisdiction to hear all complaints and conduct all trials and examinations for such crimes committed within the county as fall within the ordinary cognizance of a justice of the peace. And hence it follows that the constitutional jury in hearings and trials before him in criminal cases arising under the general laws of the state is a jury of the county of Olmsted.

But what is a jury of a county? Formerly the jury was required to be returned from the *vicinetum,* or *visne,*—that is to say, from the neighborhood of the place where the cause of action was laid, or the crime charged to have been committed,—and therefore some of them (two, four, or six, at different periods) were required to come from the *hundred* in which such place lay, and it was a cause of challenge if they did not. To avoid such vexatious challenges this was changed, as respects civil actions, by 4 Anne, *c.* 16, and, as respects *penal* actions, by 24 George II. *c.* 18, so that it was sufficient that the jurors came from the body of the county at large, though not from the particular hundred. But as respects *criminal* actions, no statutory change of the kind mentioned appears to have been made until 6 George IV. *c.* 50, though by general acquiescence, and, perhaps, under the active sanction of the courts, challenges for want of hundredors appear to have fallen into disuse before that time as respects that class of actions. Upon this whole subject see 3 Bl. Comm. 360; Co. Litt. lib. 2, *c.* 11, § 193, note 2, [191;] 2 Hale, P. C. *c.* 36.

So far as we can discover, the law of England, as it stood just prior to our revolution, and, of course, irrespective of the act of George IV., was satisfied if the jury was returned from any part of the county where a cause of action was laid or a crime committed. The effect of the changes referred to was simply to remove the *necessity* of hundredors, and the words, "*de corpore comitatus,*" "from the body of the county," "of the county," "of the vicinage," as they appear in English statutes and in American constitutions and laws, mean no more,

as applied to jurors, than that they must come from some part of the given county. Sir Matthew Hale says that jurors are "to be *de vicineto,* but this is not necessarily required, for they of one side of the county are by law *de vicineto* to try an offence of the other side of the county." 2 P. C. 264. So, in the definition of a jury, given in the opinion of the justices of the supreme court of New Hampshire, (41 N. H. 550,) jurors are, as respects the place from which they are required to be returned, described simply as men "having their homes within the jurisdictional limits of the court," and this definition is adopted by the supreme court of Nevada in *State* v. *McClear,* 11 Nev. 39, 60.   In accordance with this view, what is now section 802, U. S. Rev. St., must have been passed in 1789.   This provides that "jurors shall be returned from such parts of the district, from time to time, as the court shall direct, so as to be most favorable to an impartial trial, and so as not to incur an unnecessary expense, or unduly to burden the citizens of any part of the district with such services."   This was passed prior to the adoption of the sixth amendment to the constitution of the United States, which declares that "in all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law."   But in 1854 it was followed and upheld in *United States* v. *Stowell,* 2 Curt. C. C. 153.   The opinion in the case was delivered by Mr. Justice Curtis, (Judge Sprague concurring,) by whom the practice of selecting jurors from particular parts of the district to the exclusion of others is spoken of with approval, and as one of long standing in the district of Massachusetts.

The particular objection that this mode of selecting jurors was obnoxious to the sixth amendment does not appear, in the report of the case, to have been raised; but it is not at all probable that an objection of that magnitude (if an objection at all) would have been overlooked by a jurist of the great learning and acuteness of Mr. Justice Curtis, or that, without observing it, he would have pronounced the section (802) to be "in force."

In Virginia, a law of 1877–78 requires the *venire facias* in certain criminal cases of high grade to direct the summoning as jurors of

persons "residing remote from the place where the offence is charged to have been committed;" that is to say, so as to exclude such parts of the county as are near such place. *Poindexter's Case,* 33 Grat. 766; *Baccigalupo's Case,* Id. 807.

In *Colt* v. *Eves,* 12 Conn. 242, a law providing that jurors for the city courts of Hartford should be taken from the free men of the city, although such courts had jurisdiction over the county, was sustained. In *Gardiner* v. *People,* 6 Parker, Crim. R. 155, a law of New York, containing a similar provision, applicable "to all cases tried in any court of record," except in two counties, was upheld at general term. The counsel for defendant insists that neither of these cases are in point, but an examination of the opinions in both will show that the questions involved in the present case are considered in both of them, and the laws attacked were in both sustained, upon grounds, among others, which are entirely applicable to this case.

The acts of the legislature of this state establishing municipal courts in St. Paul, Minneapolis, Winona, Mankato, Moorhead, Hastings, and, perhaps, other cities, all contain provisions for the selections of jurors to serve in such courts exclusively from the legal voters of said cities, respectively, although the jurisdiction of those courts is, we believe, without exception coextensive with county limits.

We gather from Rev. St. Wis. 1878, §§ 2515, 2521, 2522, that an analogous regulation exists in reference to the selection of jurors for the municipal court of the city of Madison.

Instances of this kind might, we presume, be multiplied indefinitely by an examination of the legislation of the different states. In opposition to this array of authority and legislation, we have not, after considerable research, found a single authority squarely adjudicating the *unconstitutionality* of a law or practice in accordance with which a jury for a court possessing county jurisdiction is selected from one or more parts of the county to the exclusion of the rest. We have not overlooked such cases as *Shaffer* v. *State,* 1 How. (Miss.) 238, and *Hartshorne* v. *Patton,* 2 Dall. 252, or the views expressed by certain text-writers, without, so far as we discover, support by authority. If such a law or practice be unconstitutional, it is remarkable that it should not have been repeatedly so adjudicated.

v.34m—5

This remark is especially applicable to the law of the United States before cited.

It is further to be observed that the rule both in England and this country (except in California, where it has been altered by statute) is, and always has been, that talesmen might be selected *de circumstantibus*—from the by-standers—and that it might happen, as it often has, that 11 of the 12 jurors upon a panel would be such talesmen. So, also, it not unfrequently occurs that all the jurors in the jury-box, in a particular instance, reside in one town or one locality in a county. Yet we take it that neither of these states of fact was ever allowed to be a valid objection or cause of challenge upon the ground that juries so constituted were not of the county, or of the body of the county, where the crime on trial was committed.

Upon all these considerations, we are of opinion that the law involved in this case, providing that the list of persons selected to serve as jurors before the city justice of Rochester shall be composed of the qualified electors of said city exclusively, is not unconstitutional.

We have not heretofore adverted to the other clause of our constitution declaring that "the right of trial by jury shall remain inviolate," (article 1, § 4,) both because it is not specially relied upon by defendant's counsel, and because whatever might be claimed under it is sufficiently covered by what we have already said. But, with special reference to it, it is perhaps not out of place to quote a single sentence from the opinion pronounced by Judge Grover in *Stokes* v. *People,* 53 N. Y. 164, 173, viz.: "While the constitution secures the right of trial by an impartial jury, the mode of procuring and impanelling such jury is regulated by law, and it is within the power of the legislature to make, from time to time, such changes in the law as it may deem expedient, taking care to preserve the right of trial by an impartial jury."

The views which we have expressed lead to the same result arrived at by the trial court, though not upon the same grounds.

GILFILLAN, C. J., *(dissenting.)* I dissent. I think the constitution is unambiguous and should be taken just as it reads. In the phrase "an impartial jury of the county or district" the words "county or

district" refer, not to the territory within the jurisdiction of the court, but to the territory, be it of greater or less extent, (ascertained prior to the time of the alleged offence,) from which the jurors are to be procured, and does not include or mean territory which is excluded for the purpose of procuring jurors. Thus, if there were a dozen counties within the jurisdiction of the trial court, and it were the law that the jury must be drawn from only one of them, it would be a jury of that one county, and not a jury of the excluded eleven counties, from which no juror could lawfully be obtained. I think the judgment should be reversed.