F. D. SNAKENBERG, Administrator, Appellant, v. MINNEAPOLIS & ST. LOUIS RAILWAY COMPANY, Appellee.

**TRIAL:** Reception of Evidence—Order. The court may exercise a discretion as to the order in which testimony is introduced.

**EVIDENCE:** Competency—Experiments—Similarity of Conditions. Observations made five years after an accident and at the scene of the accident may be given in evidence, provided the conditions at the time of the accident and at the time of the observations are shown to be *substantially* similar.

**JURY:** Competency—Prior Service in Similar Case. Service in one cause does not *ipso facto* disqualify a juror from subsequently serving in another cause involving the same facts.

**NEW TRIAL:** Proceedings to Procure—Belated Amendment. Motions for new trial may not, after the time in which they may be filed has expired, be amended by setting up a newly discovered ground.

**NEGLIGENCE:** Acts Constituting—"Last Clear Chance." The "last clear chance" doctrine cannot be applied to a case where the person inflicting the injury had no knowledge of the presence of the injured person *until after the accident.*

**TRIAL:** Instructions—Correct Repetitions. Error may not be based on correct *repetitions* of a statement of law.

**TRIAL: Instructions—Applicability to Evidence.** A party's legal
7  right to judge whether he could safely pass over a crossing ahead
of a train may not be submitted to the jury when the evidence re-
veals the fact that the party had no knowledge of the presence of ·
the train in question until he was hit thereby.

**TRIAL: Instructions—Applicability to Evidence—Unsupported Theory.**
8  When the evidence shows that a party was injured solely because
he placed himself in a place of danger, he may not have, the jury
instructed to the effect that he would not necessarily be guilty of
contributory negligence if he failed to take the safer of two courses
to avoid danger.

**RAILROADS: Accidents at Crossings—Point of Looking.** Ordinarily,
9  the court may not say that a traveler, in approaching a railroad
crossing, is under a legal duty *at some particular place* to look for a
train; but this rule does not apply when the evidence shows that
the injured party was familiar with the crossing, and that there
was but *one* place where an approaching train could be seen.

*Appeal from Keokuk District Court.*—H. F. WAGNER, Judge.

JUNE 23, 1922.

REHEARING DENIED SEPTEMBER 23, 1922.

ACTION to recover damages for the death of Owen Smithart,
alleged to have been caused by the negligence of the defendant
in the operation of one of its trains, which struck and killed
Smithart at a crossing a short distance northeast of the town of
Martinsburg, Iowa. The jury returned a verdict for defendant.
From judgment rendered on the verdict, plaintiff appeals.—
*Affirmed.*

*C. C. Orvis, F. M. Beatty,* and *Talley & Snakenberg,* for
appellant.

*Burrell & Devitt* and *Stockman & Baker,* for appellee.

ARTHUR, J.—I. On the night of August 14, 1914, the plain-
tiff's intestate, with one Joe Borough and one N. L. Northup,
was driving northward on the main north and south highway,
a quarter of a mile east of the town of Martinsburg. This high-

way crosses the tracks of the Burlington Railroad, and also the tracks of the defendant company, about a quarter of a mile east of the defendant's depot at Martinsburg. The three men were riding in a single buggy, the plaintiff's intestate driving the horse, while sitting in the middle, on the knees of the other two. Northup was on the right side of the buggy, and Borough on the left. It was about 10:15 at night. The occupants of the buggy had been at a skating rink in Martinsburg, and in the evening had been drinking some. The tracks of the Burlington Railroad where they were crossed by these men were south of the tracks of the defendant company about 150 yards, and at the time in question, there were a field of corn and a hedge on the east side of the highway, between the Burlington tracks and the tracks of the defendant, so high that the view of the defendant's tracks to the east was obstructed until the traveler reached the south line of the defendant's right of way, or about 20 feet south of the south rail of the defendant's main track. To the north of the defendant's main track about 11 feet was a switch track or passing track of the defendant's.

At the time in question, one of the defendant's freight trains occupied the passing track, and the same was or had been cut for the crossing: that is, the train was uncoupled, so as to leave an opening for vehicles and persons to pass on the highway. Part of this freight train was west of the highway, and the engine, tender, and two freight cars were east of the highway, the engine being just far enough away from the main line at the switch to allow a train on the main line to pass in safety.

The plaintiff's intestate and his two companions stopped about 150 feet south of defendant's main line, but for what purpose it is not clearly shown; and when they were about 20 feet south of the tracks, they stopped again, this time for the purpose of determining among themselves whether they should proceed farther, under the circumstances. Some question appears in the record as to why they discussed the advisability of trying to go across the tracks at the crossing. The testimony of Northup and Borough on the trial was that they did not see the train that struck Smithart until an instant before the collision, and that, when they stopped close to the track, they discussed the question as to whether they could get across the switch

track before the freight train closed up. Statements made and signed by Northup shortly after the accident were to the effect that, at the time they stopped, they could see the passenger train, and that they then discussed the question as to whether they could get between the main track and the switch track before the passenger train got there. It appears sufficiently, however, that they did stop, and that they did apprehend some danger at that point, Northup being of the opinion that they could go across the tracks in safety.

The testimony as to whether the train that killed Smithart could have been seen by him at the time he stopped the vehicle about 20 feet south of the track is somewhat conflicting. The fact is established, however, that, when Northup saw that the passenger train would hit the vehicle, he had time to jump out of the buggy; for he did jump out of it, and alighted on the south side of the track. Immediately after Northup jumped from the buggy, the passenger train struck the vehicle, and the death of the plaintiff's intestate resulted from the collision.

There was further conflict in the testimony as to whether the view of the on-coming train was obscured by smoke and steam from the freight engine, the curve in the track, a certain telegraph pole and brace post, and a crossing sign, and as to whether any member of the freight train crew was at the crossing to signal users of the highway at the time the freight train closed up. As to the matters in conflict in the testimony, we can only say that they were passed upon by a jury adversely to the plaintiff. We must, therefore, concern ourselves only with the question as to whether there were errors of law on the part of the trial court in their presentation to the jury.

There are twenty-three assignments of error relied upon for reversal. The first three relate to the admission of certain testimony; the next two have reference to the striking of an amendment to the motion for new trial and the overruling of this motion; the sixth complains of the entry of judgment on the verdict; and the remainder all relate to the giving of, the failure to give, and the refusal to give certain instructions.

II. The case of *Borough v. Minneapolis & St. L. R. Co.*, 184 Iowa 210, is a case involving the same facts as this case, and the parties hereto stipulated that the testimony of any witness

1. TRIAL: reception of evidence: order.

or witnesses who testified in the *Borough* case might be introduced by either party, the same to be subject to all legal objections, except that no objection was to be made on the ground that the witness was not personally present, and this testimony was to be received the same as though the witness or witnesses were personally present and gave their testimony. When the testimony of one Cashatt was read in part by the plaintiff on the trial, the court permitted the defendant to read on cross-examination that portion of the testimony of this witness which had been omitted by the plaintiff. The plaintiff, appellant, assigns this as error, the specific complaint being that the court was in error in permitting the portion omitted by appellant to be read on cross-examination, instead of requiring the defendant to withhold the reading until its testimony was introduced, then reading it as a part of the defendant's testimony. We are unable to see that any prejudice could have resulted from this ruling. If the portion of the testimony read by the defendant was admissible, as appellant seems to concede, and the only error complained of was the order of its introduction, the ruling would not constitute reversible error. The order of the introduction of testimony, where no prejudice is shown, is within the discretion of the trial court. See *Pearson v. South,* 61 Iowa 232, and numerous other cases upholding the general rule.

III. The testimony of one Lister, who made observations as to the visibility of a train approaching the place of the accident as the passenger train did at the time in question, was ob-

2. EVIDENCE: competency: experiments: similarity of conditions.

jected to on the ground that the observations were made some five years after the time of the accident, a time too remote to render the testimony material and competent, and on the ground that the surroundings at the crossing were not shown to be the same as they were when the accident occurred. It is practically impossible in all such cases to reproduce in every minute detail the scene as it was at the time in question. The law does not require that the surrounding objects be precisely the same as at the time of the transaction, but if there is a substantial similarity between them at the time of the observations and at the time in question, the testimony is admissible, and the weight of it is for the jury.

*State v. Nowells,* 135 Iowa 53. In this instance, the witness testified that the tracks and the general lay of the ground at the point of the collision were the same at the time the observations were made as they had been for many years prior thereto, including the time of the accident; that the observations were made at about the same time of night as the accident; and that the light of the engine's headlight was of the same power as that of the engine that struck and killed plaintiff's intestate. These matters render the testimony admissible, and there was no error in the ruling of the court permitting it to stand.

IV. At one point in the cross-examination of the witness Joe Borough, he was asked if Smithart started to drive between the cars of the freight train at the crossing at a time when Northup said to Smithart and Borough that he did not believe they could drive through in safety, and at a time when the conditions at the crossing were the same as when they had first stopped down the road 150 feet. The witness evaded the question, and upon the court's remark that the question could be answered by "yes" or "no," he answered that "he supposed he would have to say 'yes.' " We can see no error in the court's remark, for manifestly the question could be so answered.

V. One E. E. Briggs, one of the jurors, had been a juror also on the *Borough* case, above mentioned. His answers to all questions touching his qualifications to sit as a juror on this case were to the effect that he knew nothing of this case, and knew none of the parties. It was not until the trial had proceeded some time that he became aware that this case involved the same transaction as the *Borough* case. After the motion for a new trial was filed, and after the time allowed by the court for filing same had passed, the plaintiff amended his motion, setting up the ground that the juror was guilty of misconduct. In the original motion nothing was mentioned about this alleged misconduct, but the plaintiff now contends that the amendment is germane to the original motion because the original motion contained as grounds for a new trial: First, that the verdict was contrary to law; and second, that the verdict was the result of passion and prejudice. As to the first, we know of no rule prohibiting a juror's sitting on a case merely because he has been a juror on another

3. JURY: competency: prior service in similar case.

case wherein the facts were the same, if he has not formed nor expressed an opinion as to the merits of the case. We can see that either or both of the parties might be willing to accept him as a juror, taking the chance. The whole matter comes to the question of the juror's prejudice and the effect of that prejudice on the verdict. But the amendment was not directed to the claim of passion and prejudice; it was meant to raise the question of misconduct; and the amendment setting up such matter could not be germane thereto. Nothing appears from the verdict except what was amply warranted by the evidence, and we are unable to say that it was influenced by passion and prejudice. On the contrary, we are led to believe, from the affidavit of the juror in support of the verdict, that, if the juror was moved by passion and prejudice at all, it was in favor of the appellant.

4. NEW TRIAL: proceedings to procure: belated amendment.

VI. Plaintiff requested seven instructions. It is unnecessary to set them out herein and discuss each in detail. They involve the following propositions: The invitation of the defendant to the public to pass between the cars of the freight train which was cut for the crossing; the negligence of the defendant in coupling the freight train; the negligence of the defendant in failing to give signals; the negligence of the defendant in failing to keep a lookout at the crossing; the effect of the obstructions to the view to the east and in the direction from which the passenger train was coming; the limiting of the question of the negligence of the plaintiff to the circumstances and facts as they appeared to plaintiff's intestate at the time of the collision, and not as they may have appeared upon investigation later; and the application of the doctrine of last clear chance.

The question of defendant's invitation to the public to cross its tracks, by having the freight train cut at the crossing, and the question of the reliance of the plaintiff's intestate upon that invitation, are propositions not material to this case. Assuming that there was such invitation, in law, and a right on the part of the plaintiff's intestate to rely thereon, this would not relieve the plaintiff's intestate from the exercise of ordinary care in going upon the crossing; and this ultimate question was fairly presented to the jury by the instructions.

The questions of the defendant's failure to give proper sig-

nals, keep a lookout at the crossing, and, in general, the negligence of the defendant in the management of the trains at the crossing at the time in question, are all adequately and properly covered by instructions given.

By the fourth requested instruction, the plaintiff sought to be given the benefit of the doctrine of the "last clear chance." The weakness of the appellant's position in this regard lies in

5. NEGLIGENCE: acts constituting: "last clear chance."

the fact that it is not shown by the evidence that the plaintiff's intestate was seen or heard by defendant's employees, or that they knew he was in any position of danger at the time the freight train was coupled. In the absence of knowledge on the part of the defendant's employees of the peril of the plaintiff's intestate, if he was at the time in peril, the doctrine of "last clear chance" does not apply. They could not have had a chance to save the life of the plaintiff's intestate if they did not know he was there. *Bourrett v. Chicago & N. W. R. Co.*, 152 Iowa 579; *James v. Iowa Cent. R. Co.*, 183 Iowa 231.

VII. Complaint is made in the fourteenth assignment of error that the court in its instructions called the jury's attention too frequently to the question of contributory negligence.

6. TRIAL: instructions: correct repetitions.

This case is one involving the question of negligence and contributory negligence, and of necessity demanded frequent reference to these matters in the instructions. The frequency with which the instructions make reference thereto is not a ground for reversal, if the law in each instance was correctly stated. In this we find no error, and we shall presently discuss the question as to whether the law relative to the contributory negligence of the plaintiff's intestate, in his failure to see danger or his failure to avoid it, if it was reasonably to be apprehended, was correctly given to the jury.

VIII. The plaintiff excepted to the fourteenth instruction, which is as follows:

"A person possessing the ordinary powers of seeing and hearing cannot, without negligence on his part, knowingly ap-

7. TRIAL: instructions: applicability to evidence.

proach a railroad crossing, and fail to discover an approaching train which he can readily see or hear a sufficient length of time to enable him,

with reasonable effort, to avoid danger; and in this case, if you find from the evidence that the said Owen Smithart could have discovered, by the exercise of reasonable care, the approach of the passenger train, by looking in the direction from which it was coming, at any point after he had reached the right of way of the railroad, and in time to have stopped the horse before reaching the track, then and in that event, you are instructed that the said Owen Smithart would be guilty of contributory negligence, and the plaintiff cannot recover, and your verdict must be for the defendant.''

The grounds of the exception are: First, that the instruction ignored the law that, if the plaintiff's intestate, in the exercise of ordinary care, believed he could pass over the crossing in safety ahead of the passenger train, but was unable to do so, owing to the negligent speed at which the train was being operated, then plaintiff's intestate would not be guilty of contributory negligence. The difficulty with trying to apply this principle to the circumstances of this case is that plaintiff's intestate did not see the on-coming passenger train until he was on the track, and in a position where escape was impossible. Plaintiff's intestate could not have been deceived by the negligent speed of the passenger train because, according to plaintiff's evidence and contention, he did not see it until it was too late, and never could have had a thought about his peril from this train. This eliminates from this case the question of the exercise of judgment on the part of plaintiff's intestate as to whether he could pass over the crossing in safety. Such matter could not have been contained in the instruction without error prejudicial to the defendant.

Again, it is contended that the instruction should have contained a reference to the principle that one is not necessarily guilty of contributory negligence when he is confronted with a sudden peril and fails to take the safer of two means of escape. Assuming the law to be as claimed by appellant, we are unable to see where it could have any application in this case. The negligence of the plaintiff's intestate consisted, if at all, in his placing himself in the position of danger, and not in his failure to escape injury. The testimony shows that the plaintiff failed

8. TRIAL: instructions: applicability to evidence: unsupported theory.

to see the approach of the passenger train, at least until it was directly upon him, and when there was, in fact, no means of escape.

It is further complained of the fourteenth instruction that it misstates the law with reference to the duty of the plaintiff's intestate to keep a lookout for trains at the railroad crossing.

9. RAILROADS: accidents at crossings: point of looking. The facts of this case show that it would have been futile to look for approaching trains before reaching the right of way of the railroad, for the reason that the growing corn and hedge on the east side of the road obscured the view to the east until the traveler reached the right of way. The instruction was, therefore, correct, under the circumstances, in stating that failure to look for a train approaching from the east, after the right of way was reached, would constitute negligence, especially in view of the fact that, as shown, the plaintiff's intestate was thoroughly familiar with the surroundings. The case at bar is readily distinguishable from *Bruggeman v. Illinois Cent. R. Co.*, 147 Iowa 187, cited by appellant, for the reason that the instruction herein does not state that the injured person must, at his peril, look for an approaching train at the best possible place, but states that it was his duty to look for the approaching train at the only place, according to plaintiff's evidence, from which it could have been seen. In another important particular, the instructions in this case are to be distinguished from those given in the *Bruggeman* case: The court in this case gave very clear and satisfactory definitions of "negligence" and of the term "ordinary care." With these definitions given, we find that references in the instructions to contributory negligence of the plaintiff's intestate, wherever these references are found, embody the true rule of law, and that a higher degree of care was not placed upon plaintiff's intestate than was required of him.

IX. There are other claimed errors, such as the failure to give a particular instruction as to the negligent speed of the train, and the court's giving a cautionary instruction on its own motion, to the effect that the case should be determined as if it were one between two individuals. In these particulars we find no error. There was no evidence of negligence in the speed of the train, and no instruction upon this matter was

necessary, nor was it requested.  The giving of the cautionary instruction above referred to was within the discretion of the court, and proper.

We have examined the record with care, and with reference to all claimed errors, and find no error in the trial and submission of the case to the jury, nor in overruling motion for a new trial.  Plaintiff was accorded a fair trial, and his rights were fully and properly protected.  There is no reason to disturb the verdict of the jury and the judgment of the court, and the judgment of the trial court is affirmed.—*Affirmed.*

STEVENS, C. J., EVANS and FAVILLE, JJ., concur.