**STATE of Iowa, Appellee,**

v.

**Christopher KAPPOS, Appellant.**

**No. 54249.**

Supreme Court of Iowa.

Sept. 9, 1971.

James A. Brewer, Ames, for appellant.

Richard C. Turner, Atty. Gen., and G. Douglas Essy, Asst. Atty. Gen., for appellee.

LeGRAND, Justice.

A municipal court jury convicted defendant of violating section 124.20(3). The Code, 1966, which directs that "no person shall knowingly permit any minor to purchase or consume any alcoholic beverage or beer on the premises of a class 'B' * * * permit holder." He was sentenced to pay a fine of $400.00 and appeals from that judgment. We affirm.

Defendant lists three errors upon which he relies for reversal. He asserts (1) that section 602.34, The Code, excluding all persons except residents of Ames from the municipal court jury lists is unconstitutional and deprived him of an impartial jury trial; (2) that the trial court erred in admitting rebuttal evidence; and (3) that the trial court erred in retaining on the jury panel persons who had earlier served on a case involving an alleged crime committed by a professional dancer while performing at defendant's place of business. We consider these assignments in the order set out above.

■ I. Defendant is alleged to have knowingly permitted minors to purchase or consume beer in his tavern in Cambridge, a small town in Story County. Pursuant to chapter 602, The Code, 1966, the jury which tried defendant came entirely from residents of Ames.

That chapter permits no other course. Section 602.1, authorizes any city having a population of 5000 or more to establish a municipal court. It further defines the municipal court district as being composed of "all that part of each civil township within the corporate limits of such city." . Section 602.34 limits the selection of municipal court jurors to those whose names appear in the pollbooks of the last general election in the territory included in the municipal court district. This statute disqualifies from jury service all residents of the county except persons living in Ames, even though the territorial jurisdiction of the court is coextensive with the territorial limits of the county. (Section 602.16. The Code.)

Defendant objects to this exclusion. He says he resides outside the city of Ames and is accused of having committed a crime outside the city, but must nevertheless be tried by a jury composed entirely of residents of that municipality. He challenges the constitutionality of such a statute as being violative of the equal protection and due process provisions of both the federal and state constitutions. (Amendment 14, U. S. Constitution and Article I, sections 9 and 10, Constitution of Iowa.)

There is no merit to defendant's contention. Under the due process and equal protection clauses of both the federal and state constitutions, there is no requirement that all shall invariably be treated alike, only that classifications made be reasonable and not invidiously discriminatory. Becker v. Board of Education (1965), 258 Iowa 277, 282, 138 N.W.2d 909, 912; Board of Directors of Independent School District of Waterloo v. Green (1967), 259 Iowa 1260, 1270, 147 N.W.2d 854, 860; Lee Enterprises, Inc. v. Iowa State Tax Commission (1968), 162 N.W.2d 730, 753.

Statutes and rules of court limiting the area from which jurors may be drawn are not unusual. They have been generally upheld as resting on reasonable and rational grounds, usually to minimize inconvenience to the jurors and expense to the government. Hoyt v. Florida, 368 U.S. 57, 7 L. Ed.2d 118, 121, 82 S.Ct. 159; Crawford v. State, Alaska 1965, 408 P.2d 1002, 1005, 1008; United States v. Gottfried, 2 Cir., 1948, 165 F.2d 360, 364, cert. den., 333 U.S. 860, 68 S.Ct. 738, 92 L.Ed. 1139; United States v. Titus, 2 Cir., 1954, 210 F.2d 210, 212.

The cases cited by defendant to support his argument are all patently discriminatory in purpose, frequently on racial grounds. They are easily distinguishable from the present case and afford defendant no help. We have been referred to no authority holding it unconstitutional to establish reasonable and rational geographical districts for the selection of jurors as our statute does here.

We approve this statute the only time we had occasion to review it. Kinsey v. Clark (1933), 215 Iowa 765, 767–768, 246 N.W. 840, 841.

We hold the selection of jurors as provided in section 602.34 did not violate defendant's constitutional rights nor deprive him of an impartial jury.

II. Defendant next complains because Steven Paul was improperly permitted to testify as a rebuttal witness. His objection is two-fold. First, he asserts the witness should not have been allowed to testify because his name was not endorsed on the minutes as required by section 772.3, The Code; and, second, he urges it was error to receive evidence of a specific incident to refute testimony of defendant's good character.

█ We believe the testimony objected to was proper rebuttal and therefore it was unnecessary that the witness' name be endorsed on the information. State v. Nelson, Iowa 1967, 153 N.W.2d 711, 714; State v. Johnston (1960), 252 Iowa 335, 340, 105 N.W.2d 700, 702.

█ We also hold against defendant's second contention assailing the admissibility of a specific instance of alleged bad conduct to refute evidence of good character. We do not reach the merits of this argument because we agree with the trial court that defendant's character was not put in issue. The five witnesses produced by defendant did not attest to his good character but rather attempted to establish his habit in dealing with minors who sought service at his bar. The State called Steven Paul in rebuttal to show defendant did not always follow the practice outlined by his witnesses.

Although habit is sometimes said to be closely related to character, (McCormick, Law of Evidence, section 162, page 343 and 2 Wigmore on Evidence, Third Ed., 1940, sections 375, 376, pages 304–306) they are not the same. We have no doubt that we are dealing here with evidence of habit, not character.

Since the State did not object, we do not decide whether it was proper in the first place to admit evidence of habit. All we hold is that the State was entitled to rebut this evidence, once it was in.

█ III. The remaining issue deals with permitting jurors who had served on a pre-vious case involving defendant's place of business to serve on this jury. We relate the factual background before considering this assignment.

Prior to the selection of the jury, defendant's counsel orally objected to the presence on the panel of persons who one week earlier had served in the case of State v. Jubceck, in which Linda Jubceck was convicted of lewd and indecent conduct while employed as a go-go dancer in defendant's tavern. Defendant claims the presence of these jurors on this case was prejudicial and deprived him of a fair trial in violation of Amendment 14 to the Constitution of the United States and of Article I, sections 9 and 10, of the Constitution of Iowa.

We cannot agree that this deprived defendant of a fair trial nor that his constitutional rights were violated.

Defendant made a blanket objection, asking disqualification of all who had served on the Jubceck case. The trial court denied this request but suggested defendant could attempt to show prejudice on voir dire examination, at which time the court would rule on the *individual* juror's qualifications to serve.

We believe the trial court was correct. The grounds for challenge are set out in section 779.5, The Code. We recently held in State v. Grove, Iowa 1969, 171 N.W.2d 519, 520, that the trial court has broad power in acting on challenges to avoid an unfair trial. But there must be some showing of prejudice. In Schoonover v. Fleming, 239 Iowa 539, 546, 547, 32 N.W. 2d 99, 104, we held a juror was not disqualified simply because he had previously sat on a case involving similar issues.

Similarly in Snakenberg v. Minneapolis and St. Louis Railway Company, 194 Iowa 215, 220, 188 N.W. 935, 938, we said, "* * * We know of no rule prohibiting a juror's sitting on a case merely because he has been a juror on another case wherein the facts were the same, if he has

not formed nor expressed an opinion as to the merits of the case. \* \* \* *The whole matter comes to the question of the juror's prejudice, and the effect of that prejudice on the verdict."* (Emphasis added.)

Defendant made no effort to show prejudice in fact, although that course was pointedly suggested by the trial court.

The judgment of the trial court is affirmed.

Affirmed.

All Justices concur except BECKER and RAWLINGS, JJ., who dissent and REYNOLDSON, J., who takes no part.

BECKER, Justice (dissenting).

I respectfully dissent.

The key question here involves the power of the legislature to delegate to municipalities the right to create a judicial forum which has jurisdiction over crimes (and civil controversies) committed outside the city boundaries. Its jurors are selected entirely from city residents.

One should perhaps start with the observation that municipal courts fill a vital role in city government. They are a necessity until and unless replaced by something better. Here we are talking only about their role in controversies which are confined to matters arising beyond their corporate limits.

### DEFENDANT'S RIGHTS—JURY SELECTION

The appellant argues the selection of the jury from only a portion of the territorial jurisdiction of the court violated his constitutional rights of due process and the equal protection of the law under the Fourteenth Amendment and also his right to a jury trial. Article I, §§ 9, 10, Iowa Constitution.

One important requirement of due process is that the defendant be tried by a fair and impartial jury. See Note, Constitutional Law: State Jury Selection Procedure Held a Violation of the Fourteenth Amendment, 1967 Duke L.J. 346, 350 (1967).

The selection of a nonrepresentative jury may preclude a defendant from receiving an impartial trial. The United States Supreme Court said in Glasser v. United States, 315 U.S. 60, 86, 62 S.Ct. 457, 472, 86 L.Ed. 680, 707 (1942) (alleged exclusion of women except for member of League of Women Voters):

"\* \* \* Tendencies, no matter how slight, toward the selection of jurors by any method other than a process which will insure a trial by a representative group are undermining processes weakening the institution of jury trial, and should be sturdily resisted. That the motives influencing such tendencies may be of the best must not blind us to the dangers of allowing any encroachment whatsoever on this essential right." (loc. cit. 315 U.S. at p. 86, 62 S.Ct. at p. 472).

One standard that courts have adopted for jury selection practices is that the panel be from a "cross-section of the community" or that it be a "body truly representative of the community". See Labat v. Bennett, 365 F.2d 698, 720 (5 Cir. 1966); State v. Madison, 240 Md. 265, 213 A.2d 880, 885 (1965); Allen v. State, 110 Ga. App. 56, 137 S.E.2d 711, 713 (1964); Witherspoon v. Illinois, 391 U.S. 510, 524, 528, 88 S.Ct. 1770, 20 L.Ed.2d 776, 786, 788 (1968) (Douglas concurring). Note, Duke L.J. 346, 350 (1967). The Supreme Court has stated this requirement in several cases:

"It is part of the established tradition in the use of juries as instruments of public justice that the jury be a body truly representative of the community." Smith v. Texas, 311 U.S. 128, 130, 61 S.Ct. 164, 165, 85 L.Ed. 84, 86 (1940) (exclusion of blacks—state court).

"And its exercise (of jury selection) must always accord with the fact that the proper functioning of the jury system, and, indeed, our democracy itself, requires that the jury be a 'body truly representative of the community', and not the organ of any special group or class." Glasser v. United States, 315 U.S. 60, 86, 62 S.Ct. 457, 472, 86 L.Ed. 680, 707 (1942).

"Our duty to protect the federal constitutional rights of all does not mean we must or should impose on states our conception of the proper source of jury lists, so long as the source reasonably reflects a cross-section of the population suitable in character and intelligence for that civic duty." Brown v. Allen, 344 U.S. 443, 474, 73 S.Ct. 397, 416, 97 L.Ed. 469, 498 (1953). (dictum).

And in Thiel v. Southern Pacific Co., 328 U.S. 217, 219, 66 S.Ct. 984, 985, 90 L.Ed. 1181 (exclusion of daily wage-earners) (a federal civil case decided under the Court's supervisory power), the Court said, "The American tradition of trial by jury, * * * necessarily contemplates an impartial jury drawn from a cross-section of the community."

The Georgia Court of Appeals said in Allen v. State, 110 Ga.App. 56, 137 S.E.2d 711, 713 (1964), (white civil rights worker complaining of exclusion of blacks):

"* * * The exclusionary practice condemned by the Fourteenth Amendment does not depend upon the exclusion from juries of a group to which the defendant belongs or identifies himself, but on the resulting failure of the jury to represent a cross section of the community. * * *"

In the present case, while the defendant and his witnesses were all rural residents of Story County, the jury was drawn exclusively from residents of the City of Ames. As petitioner argues, it is reasonable to believe that the rural residents may differ from those of the city. Some occupations such as farming, would be excluded when the jury is drawn entirely from the city. The defendant in this case is not a farmer although some of his witnesses were. Allen v. State, 110 Ga.App. 56, 137 S.E.2d 711 (1964), involving a white civil rights worker's objections that blacks were excluded from the jury, is authority for the proposition that the defendant need not be a member of the excluded class. Also, State v. Madison, 240 Md. 265, 213 A.2d 880, 882–886 (1965). While exclusion because of race has been involved in many of the jury selection cases, the exclusion of other groups may also violate the defendant's constitutional guarantees. Hernandez v. Texas, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866 (1954) (Mexican-Americans); Kentucky v. Powers, 139 F. 452 (C.C.Ky. 1905), (political party); State ex rel. Passer v. Co. Bd. of Renville Co., 171 Minn. 177, 213 N.W. 545 (1927) (women); State v. Madison, 240 Md. 265, 213 A.2d 880 (1965) (belief in God required); Labat v. Bennett, 365 F.2d 698 (5 Cir. 1966) wage earners and blacks).

"* * * But community prejudices are not static, and from time to time other differences from the community norm may define other groups which need the same protection. Whether such a group exists within a community is a question of fact. When the existence of a distinct class is demonstrated, and it is further shown that the laws, as written or as applied, single out that class for different treatment not based on some reasonable classification, the guarantees of the Constitution have been violated. * * *." Hernandez v. Texas, 347 U.S. 475, 478, 74 S.Ct. 667, 670, 98 L.Ed. 866, 870 (1954). (Mexican-Americans.)

"* * * We of course recognize that the Fourteenth Amendment reaches not only arbitrary class exclusions from jury service based on race or color, but also all other exclusions which 'single out' any class of persons 'for different treatment not based on some reasonable classification.' * * *." Hoyt v. Florida, 368

U.S. 57, 60, 82 S.Ct. 159, 7 L.Ed.2d 118, 121 (1961) (women—held not violation).

"* * * This does not mean, of course, that every jury must contain representatives of all the economic, social, religious, racial, political and *geographical* groups of the community; frequently such complete representation would be impossible. But it does mean that prospective jurors shall be selected by court officials *without systematic and intentional exclusion of any of these groups. * * *.*" Thiel v. Southern Pacific Co., 328 U.S. 217, 220, 66 S.Ct. 984, 90 L.Ed. 1181 (1946) (exclusion of daily wage earners). (Emphasis added.)

While Thiel was decided on the basis of the Supreme Court's supervisory power over the federal courts and not on constitutional grounds, "* * * the principles discussed in those opinions are applicable to the issue of the citizen's rights in State courts to the protections of the Fourteenth Amendment." Allen v. State, 110 Ga.App. 56, 137 S.E.2d 711, 714 (1964). Also see, Labat v. Bennett, 365 F.2d 698, 722 (5 Cir. 1966).

The majority opinion cites United States v. Gottfried, 165 F.2d 360 (2 Cir. 1948). In that case, the Circuit Court of Appeals upheld the jury selection practices in the Southern District of New York which excluded heavily rural counties. The court pointed out that there were rural areas within the counties from which the panel was drawn, that the inclusion of the eight rural counties would only increase the likely number of rural jurors on a particular jury from one to two, and that the bulk of the population was in the three counties from which the jury was drawn (only 550,000 of 4,400,000 total population of the district lived in the excluded area). (165 F.2d at pp. 363–364). The court felt this was a valid practice under the statute, 28 U.S.C. § 1865(a), allowing the court to divide the district for purposes of an impartial trial, economy, and ease of attendance. (165 F.2d at p. 364). The court did note

that there could not be deliberate discrimination against geographical areas in jury selection:

"* * * jurors must be drafted 'without systematic and intentional exclusion' of any 'geographical,' as well as of any 'social, religious, racial' or 'political' group; and that may well forbid the officials who draw up the lists from excluding any part of the district at their own choice. We assume that they may not do so; but if they do not, 'geographical' uniformity is satisfied * * *." (loc. cit. 165 F.2d at p. 364).

Another case cited in the majority opinion is Crawford v. State, 408 P.2d 1002 (Alaska 1965). In that case, jurors were called only from the area within 15 miles of Anchorage. The court noted that seventy percent of the population lived within that area but that it included only one-half of one percent of the total area. While the majority of natives, Eskimos and farmers lived outside of this area, nonetheless a substantial number of these persons lived within the area from which the jury was drawn. (408 P.2d at p. 1007). The court felt that Anchorage and the surrounding area could give a fair cross-section of the community. (408 P.2d at p. 1009).

Appellee's brief cites Liskowitz v. State, 229 Wis. 636, 282 N.W. 103, 106 (1938):

"* * * (defendant contends) that because Waukesha county is divided into two municipal court districts and the municipal courts have jurisdiction to try the offenses charged against the defendant, the jury should have been drawn from the municipal court district in which the offense charged was committed. *Had the prosecution been laid in a municipal court of the county, no doubt the jury trying him should and would have been selected from the district comprising that court's territorial jurisdiction.* But the jurisdiction of the municipal court is concurrent with that of the circuit court in criminal cases. The circuit court had

jurisdiction. The trial being in the circuit court, it seems manifest that the jury was properly drawn from the county. * * *." (Emphasis added).

United States v. Gottfried, and Liskowitz v. State, both supra, would appear to be in favor of appellant's contention that the jury should have been drawn from the county since the entire county is within the municipal court's territorial jurisdiction.

## VENUE

"In the absence of any limitation by constitutional provision, it seems to be generally recognized that the power of a state legislature to fix the venue of criminal prosecutions in a county or district other than that in which the crime was committed is unrestricted." Annotation, Constitutionality of Statute for Prosecution of Offense in county other than that in which it was committed, 76 A.L.R. 1034, 1035; Wharton's Criminal Law and Procedure (1957), Vol. 4, § 1509, p. 95.

One exception to this rule is Swart v. Kimball, 43 Mich. 443, 5 N.W. 635 (1880) in which the Michigan Supreme Court declared unconstitutional a statute providing for trial for a specific offense in any county in the state. The state constitution provided merely that, "The right of trial by jury shall remain * * *." The court discussed the meaning of the right to jury trial. "What right? Plainly the right as it existed before—the right to a trial by jury as it had become known to the previous jurisprudence of the state." (loc. cit. 5 N.W. at p. 637). Blackstone, the court said, defined vicinage as generally the county. In England, the right to a jury of the vicinage is "an old rule of the common law." Some English statutes, dealing with crimes such as treason, allowed trial in any county but the court felt that these exceptions were among the grievances leading to the American Revolution. "If they were forbidden by the unwritten constitution of England, they are certainly unauthorized by the unwritten constitution of the American states, in which the utmost pains have been taken to preserve all the securities of individual liberty." (loc.cit. 5 N.W. at p. 638). "* * * no one doubts that the right to a trial by a jury of the vicinage is as complete and certain now as it ever was, and that in America it is indefeasible." (5 N.W. at p. 639). The court then commented on the reason for the rule:

"* * * But a disadvantage quite as great as the want of means is likely to be experienced in the fact that the accused is away from his friends and among strangers, who will know of him only this: that he is under arrest upon presumptive proof of being a felon. Of what avail is a man's good reputation to him under such circumstances, when the neighbors who know it are at a distance, and when the very accusation among strangers will necessarily fix upon him a strong suspicion." (loc.cit. 5 N.W. at p. 639).

The majority of states allow a change of venue on the application of the prosecution. Wharton's Criminal Law and Procedure (1957), Vol. 4, § 1515, p. 106. In State ex rel. Fletcher v. District Ct., 213 Iowa 822, 238 N.W. 290 (1931), the Iowa Supreme Court upheld such a change of venue when an impartial trial could not be had in the county.

Some courts, where the constitution expressly required a trial by the county, have denied the right of the prosecution to a change of venue. State ex rel. Parker v. Roberds, 155 Kan. 165, 123 P.2d 806 (1942); State v. Knapp, 40 Kan. 148, 19 P. 728 (1888); Wheeler v. State, 24 Wis. 52 (1869); Kirk v. State, 41 Tenn. 344 (1860); State v. Black, 131 Or. 218, 282 P. 228 (1929).

In People v. Powell, 87 Cal. 348, 25 P. 481 (1891), the California court declared unconstitutional a statute allowing for change of venue on application of the district attorney. The California constitution

provided only that, "The right of trial by jury shall remain inviolate. * * *."

This is the same wording as in the Iowa Constitution, Art. I, § 9. The court said:

"* * * Our constitution does not define the right of trial by jury. It was a right then existing, the extent, scope, and limitations of which were well understood, and the constitution simply provides that such right shall be secured and remain inviolate. If the right at common law was as above stated (a trial of the vicinage or county), there can be no question but that an act of the legislature, authorizing the trial of a defendant out of the county where the offense is charged to have been committed, is an abridgement of the right, and for that reason void. * * *."

The court felt that the practice of allowing the prosecution a change of venue was "almost uniformly condemned as unconstitutional in other states." The court did not feel that the absence of an express right to trial by the county which was present in these other states made any difference. The right of jury trial was well understood, they reasoned. "Does not our constitution confer upon a defendant charged with crime precisely the same right, although not expressed in terms?" (loc. cit. 25 P. 481, 483).

In Olive v. State, 11 Neb. 1, 7 N.W. 444, 446 (1880), the Nebraska Supreme Court in discussing a state constitutional provision ensuring the right to a jury from the county or district where the offense was committed said:

"* * * such law must be accompanied by one under which jurors can be called from the whole body, and not from a portion, merely, of such district. In other words, the trial district and the jury district must be the same. The grand design of this provision of the fundamental law seems to be to secure to the accused a trial by a jury from the vicinage where the crime is supposed to have been committed, so that he may have the benefit of his own good character and standing with his neighbors, if these he has preserved, and also of such knowledge as the jury may possess of the witnesses who give evidence before them. * * *."

The Nebraska court has said that the state constitutional requirement derived from the common law:

"* * * The object, then, as we have seen, was to embody in the fundamental law of the state an ancient rule of the common law, by which is secured to the accused, in criminal cases, a substantial right. The idea that it was intended to include the territory within which the accused is known, and where his good character will avail him, is a reasonable one, and consistent with recognized principles of the law. * * *." State ex rel. Scott v. Crinklaw, 40 Neb. 759, 59 N.W. 370, 372 (1894).

In State v. Pugsley, 75 Iowa 742, 748, 38 N.W. 498, 501 (1888), a statute providing that the venue for an offense committed within 500 yards of the county boundary line could be in either county was upheld against the argument that this violated defendant's constitutional rights. The court said that this statute had been enacted before the constitution. "This being so, the right of trial by jury is the same now as it was when the first construction was adopted, and therefore the statute in question is not unconstitutional, for the reason that constitutional rights of the defendant have not been in any respect impaired."

What conclusion is to be drawn from all of this? Problems of local prejudice against the State and the State's rights to a change of venue under such circumstances are not involved here. What we are talking about is both a jurisdictional and venue problem. Where original *initial* jurisdiction (and venue) is placed in a court which draws absolutely none of its jurors from the area over which jurisdiction *and venue* is given, there is certainly a

systematic exclusion of jurors on a geographical basis. Thus, I would hold there is a denial of a fair, impartial jury which truly represents a cross-section of the community and a denial of due process.

There are cases to the contrary. State v. Kemp, 34 Minn. 61, 24 N.W. 349 (1885); Karnes v. Commonwealth, 125 Va. 758, 99 S.E. 562 (1919); State v. Fendrick, 77 Ohio St. 298, 82 N.E. 1078 (1907); State v. Henning, 83 Ohio App. 445, 78 N. E.2d 588 (1948); State v. King, 84 Ohio App. 24, 85 N.E.2d 157 (1948).

However, I submit these cases allow the desire for jury convenience to overrule the demand for a properly impaneled jury.

## POSTURE OF COUNTY RESIDENTS

It is submitted that jurisdiction and venue in municipal courts over county controversies is equally an unconstitutional delegation of power over county residents. They are systematically excluded from the operation of the court that has jurisdiction over them. This is true not only of their role as jurors but of their role as nominators and electors of the judges, court clerks and bailiffs.

## POSTURE OF CITY RESIDENTS

City residents as jurors are equally imposed upon. They must serve if unexcused. Often this is a real personal sacrifice. Yet they are asked—on a regular basis—to serve on cases that do not involve their community.

## CONCLUSION

In short municipal judges and court personnel are elected by the city electors; the juries are entirely selected from city inhabitants; yet a nonresident of the city may be tried (without a showing of local prejudice) by a city-selected judge and a city-impaneled jury *for a crime allegedly committed outside the city limits.* This, in my judgment, is not a trial by a jury of one's peers. I would reverse and hold a municipal court, as presently organized,

does not have original jurisdiction—or venue—over crimes committed wholly outside the city which created it.

RAWLINGS, J., joins in this dissent.