D. W. Bates, Superintendent of Banking, Receiver, Plaintiff, v. American Trust & Savings Bank of Le Mars, et al., Defendants.

Henry Wittkop et al., Applicants, Appellants, v. D. W. Bates, Superintendent of Banking, Receiver, Respondent, Appellee.

No. 43789.

June 15, 1937.

Rehearing Denied September 24, 1937.

Nelson Miller and Keenan & Kelley, for appellants.

E. P. Murray and T. E. Diamond, for appellee.

MITCHELL, J.—There are many reasons why lawsuits are brought, but seldom, indeed, is it that a stipulation prepared between the parties interested, with the sole thought of ending "long and expensive litigation," is the cause of a lawsuit. That is what we are confronted with in this case.

Willis G. Bolser during his lifetime lived at Le Mars, Iowa. He was the owner of a large amount of stock in, and president of, the American Trust & Savings Bank at Le Mars, and he was also the owner of a private bank at Oyens, Iowa, operated under the name of the Plymouth County Bank. In the year 1928 Bolser died and his estate was administered in the district court of Plymouth County.

In the year 1931 the Plymouth County Bank of Oyens pledged to the American Trust & Savings Bank of Le Mars sixty shares of common stock of the Oyens Lumber Company, which was owned by the Plymouth County Bank. This was pledged as collateral security for an indebtedness owed by the Plymouth County Bank to the American Trust & Savings Bank in the sum of $15,000, evidenced by certificates of deposit in the Plymouth County Bank for this amount. The sixty shares of stock in the lumber company have been held ever since and are still being held by the Le Mars Bank.

The financial troubles of 1933, which were so common in the State of Iowa, brought about the receivership of the American Trust & Savings Bank, and D. W. Bates, superintendent of banking of the State of Iowa, was appointed as receiver. The estate of Willis G. Bolser was also affected by conditions existing at that time, and it was conceded that the estate was insolvent. Under order of court the assets of the private bank, known as the Plymouth County Bank of Oyens, Iowa, were

segregated and set apart as a separate unit in the estate of Willis G. Bolser, and the business ordered to be continued, which was done. On December 29, 1934, the district court of Plymouth County, Iowa, appointed receivers for the Plymouth County Bank of Oyens, Iowa. In due time D. W. Bates as receiver of the American Trust & Savings Bank of Le Mars brought an action against the Bolser estate and the executors thereof, based on the statutory 100% assessment on the 362½ shares of capital stock in the American Trust & Savings Bank held and owned by Willis G. Bolser at the time of his death. In addition to this, there was a claim filed by Carrie E. Bolser, the widow, for money which she had advanced to her husband.

With this situation confronting the various interests, conferences were held. Bates as receiver of the Le Mars bank was represented by his attorneys; the receivers of the Oyens bank were represented by their attorneys; the Bolser estate and executors thereof were represented by their attorneys; and Carrie E. Bolser, the widow, was represented by her attorneys. Many meetings were held, with the purpose in mind of reaching an adjustment of the various interests of all of the parties, or making a settlement of what they thought might be "long and expensive litigation". Finally they arrived at a point that a written stipulation was prepared and signed by all of the attorneys and parties represented. This of course was made subject to the approval of the court as it affected the property of the Bolser estate. The court later approved the stipulation, which is known as Exhibit A, and entered an order, directing that the provisions contained in the stipulation be carried out.

The difficulty which confronts us here is the interpretation of that stipulation.

It is the claim of the receivers of the Plymouth County Bank of Oyens, that under Exhibit A they were entitled to all of the property, real and personal, which was carried on the books of the Plymouth County Bank, as property belonging to that bank at the time of the death of Willis G. Bolser, the owner of said bank. Listed on the books of the Plymouth Bank were sixty shares of stock in the Oyens Lumber Company of Oyens, Iowa. This stock had been pledged as collateral, to secure $15,000 worth of certificates of deposit of the Plymouth County Bank which belonged to the American Trust & Savings Bank of Le Mars, Iowa. It is the contention of D. W. Bates, receiver

of the American Trust & Savings Bank that the only thing that was settled by the stipulation, Exhibit A, was the stock assessment due the receiver from the Bolser estate, and that the sixty shares of stock in the Oyens Lumber Company were not mentioned or considered and that he is entitled to hold same as collateral for the certificates of deposit owed by the Plymouth County Bank. Bates having refused to turn over the stock in the Oyens Lumber Company, the receivers of the Plymouth County Bank filed an application, asking the court to direct the receiver of the Le Mars bank to deliver the sixty shares of stock. Upon a hearing, at which oral evidence was offered, the court refused to enter an order, and the receivers of the Plymouth County Bank have appealed to this court.

The question which confronts us here is the proper construction of Exhibit A—the stipulation of settlement entered into between these parties, all of whom were interested in the property of the Willis G. Bolser estate.

The receiver of the Le Mars bank sought to secure the assessment on 362½ shares of stock. The Plymouth County Bank of Oyens was a private institution, owned by Bolser during his lifetime, and of course his estate was liable to the creditors of that bank. Carrie E. Bolser, the widow, had advanced money to her husband during his lifetime, and she claimed she was entitled to be subrogated to certain rights against certain property. The executors of the estate were there, representing the estate. The Bolser estate, the Le Mars bank, and the Plymouth County Bank were all insolvent. Able counsel represented the interested parties.

Paragraph 9 of Exhibit A is as follows:

"That the claimants and applicant, D. W. Bates, Superintendent of Banking of the State of Iowa, as Receiver of The American Trust and Savings Bank of Le Mars, Iowa, in order to fully compromise, settle, liquidate and discharge his claim against the estate of Willis G. Bolser, deceased, for the 100 per cent liability and assessment, in the sum of $36,250.00, for which said amount he has commenced action against the executors of said estate, and others, in an action in equity, now pending in the District Court of Plymouth County, Iowa, being equity Number 16222, hereby states and alleges that he is ready and willing to accept in full settlement and discharge and liquida-

tion of said claim, the following items of property, to be conveyed to him by the executors of said estate, upon the approval and order of this Court, to wit: * * *'' (Then follows a long list of property).

It will be noted that this paragraph specifically states the settlement which Bates as receiver of the Le Mars bank is making with the Willis G. Bolser estate is for the 100% liability and assessment, and it calls attention to the fact that suit on this assessment has already been brought.

Subsection (g) of paragraph 11 (which is the second paragraph after paragraph 9 of Exhibit A), is as follows:

"Any and all other assets, other than (a), (b), (c), (d), (e), and (f), above mentioned, whether the said assets consist of real estate, personal property, notes, securities, or any other choses in action, which is shown by the books of the said Plymouth County Bank of Oyens, Iowa, as being among the assets of and constituting the business of the Plymouth County Bank of Oyens, Iowa, and including

"The North Half of the Northeast Quarter (N½ NE¼), and the Southeast Quarter of the Northeast Quarter (SE¼ NE¼), all in Section Eight (8), in Township One Hundred Eighteen (118), North of Range Forty-nine (49), West of the Fifth P. M., in Grant County, South Dakota, now standing in the name of N. J. Bolser, as executor of the estate of Willis G. Bolser, deceased, all of the same to be transferred and conveyed by the executors of said estate, to the person or persons to be hereafter designated as receiving the same for the use and benefit of the depositors in and creditors of the said Plymouth County Bank of Oyens, Iowa.''

It is under subsection (g) of paragraph 11 that the appellants claim the right to the 60 shares of the Oyens lumber stock. That paragraph uses the word "assets". The 60 shares of stock which the Plymouth County Bank is now asking to have returned has a value of $6,000. It was pledged as collateral for $15,000 borrowed from the Le Mars bank. The Plymouth County Bank still owes the Le Mars bank $15,000. In other words, it owes $9,000 more than the value of the stock it now seeks to have returned. In view of this situation, could the parties to Exhibit A possibly have considered the 60 shares of stock

given as collateral, as an asset of the Plymouth County Bank at the time the stipulation was entered into?

In the case of Wallace v. Homestead Company, reported in 117 Iowa 348, at pages 354, 355, 90 N. W. 835, 837, this court said:

"Looking to the purpose of the agreement as expressed in the instruments themselves, and applying the generally accepted canons of construction thereto, we think it fairly appears that there was no thought of the parties that they were making settlement of the alleged libel. These rules of construction may be stated as follows: 'One of the rules of interpretation most frequently referred to is to the effect that the intention must be determined by a consideration of the whole instrument, rather than by any clause; the theory being that the parties presumably had the same purpose and object in view in all parts of the instrument; and, consequently, if some of the stipulations are more obscure than others, or one part is seemingly inconsistent with another, the main purpose and object as collected from the whole instrument may be so clear and distinct as to throw light upon some obscure or inconsistent parts.' Again: 'This principle receives an important application in the rule of *ejusdem generis*, according to which general words following words of a more particular character are regarded as limited in their meaning by the former. This rule is, however, as are practically all of the rules of construction, subordinate to the requirement that the intent of the parties is to be chiefly sought, and will, of course, not apply if the intent appears to be otherwise. General words preceding other words that are particular in meaning are likewise on the same principle limited by the particular words, unless the intention appears to be otherwise.' 17 Am. & Eng. Enc. Law (2d Ed.) pp. 4, 6, and cases cited."

Thus, looking at this whole instrument, we find it specially provides for the settlement by Bates of his right against the Bolser estate for an assessment on the Le Mars bank stock. There is no other reference to any settlement or adjustment that Bates as receiver is making except this particular paragraph, which specifies just what he is doing. Added to this is the fact that the lumber stock which it is now being asked be returned, was collateral to a $15,000 loan and had nothing whatever to do with the Le Mars bank assessment. In view of the fact that

the loan, for which the lumber stock was given as security, was in the amount of $15,000, no one connected with Exhibit A could have considered the lumber stock as an asset of the Plymouth Bank. Added to this is the evidence that at the time this instrument was prepared it was specifically stated that no other adjustment or settlement was being made by Bates as receiver except the settlement of the Le Mars bank stock assessment. The stipulation is not as clear as it might have been, and has caused the writer of this opinion a great deal of trouble. No doubt this is due to the fact that at the time Exhibit A was prepared the attorneys representing Bates had no knowledge that the 60 shares of lumber stock were held by the Le Mars bank, and the receivers representing the Plymouth County Bank did not know that the stock had been placed as collateral with the Le Mars bank. Nor did the attorneys representing the executors of the estate have any knowledge of this. Taking into consideration the lack of knowledge on the part of all of these parties, the fact that Exhibit A specifically states the settlement is on the claim of Bates as receiver against the Bolser estate for the stock assessment in the Le Mars bank, and add to that that the part of the paragraph which the appellants rely upon specifies "assets" and that the lumber stock was pledged as collateral to a loan twice the value of the lumber stock, we arrive at the conclusion that the lower court was right in refusing to enter the order, directing Bates, as receiver, to surrender the stock in the lumber company. It follows that the judgment and decree of the lower court must be, and it is hereby, affirmed.—Affirmed.

ANDERSON, DONEGAN, PARSONS, SAGER, and STIGER, JJ., concur.

RICHARDS, C. J., and HAMILTON, J., concur in the result.