GLADYS CESSNA HEWITT et al., appellants, v. JOSEPH WHATTOFF et al., appellees.

No. 49836

(Reported in 100 N.W.2d 24)

December 15, 1959.

Hegland & Newbrough, of Ames, for appellants.

Joseph H. Buchanan, of Ames, for appellees.

THOMPSON, J.—The controversy here arises because of a written easement granted by plaintiffs' predecessor in title across the property now owned by them. The trial court found the issues in favor of the defendants. On August 6, 1918, Charles B. Ash was the owner of a tract of land lying south of and abutting upon Boone Street, also known as Lincoln Way, in the city of Ames. On that date he conveyed the southerly 192 feet of the lot to E. A. Zander, retaining title to the north 158 feet. Both tracts are 69 feet wide. As a part of the conveyance Ash granted to Zander an easement across the north 158 feet retained by him, the easement being described in these terms:

"Beginning at a point 59 feet West of the Northwest Corner of Lot 3, Block 5, Beardshear's Addition to the City of Ames, Story County, Iowa and in the center of Boone Street (Lincoln Way); thence South 158 feet; thence West 10 feet; thence North 158 feet; thence East 10 feet to the place of beginning, to be used for driveway only, for ingress and egress for the said E. A. Zander and for no other purpose; said easment shall continue until other means of ingress and egress have been provided by the opening of street or streets or otherwise to the above land, * * *."

There was at the time no other means of ingress or egress from the tract conveyed to Zander; and apparently the way granted across the west 10 feet of the Ash property has been used since the date of the grant. The plaintiffs are now the owners of the servient tenement by mesne conveyances from Ash, and the defendants in the same manner own the dominant tenement, through title derived from Zander.

The plaintiffs' action to quiet title against the easement is based on these facts: On the west and immediately adjoining defendants' dominant easement, which is known in the record as Lot D and will be so referred to herein, is a tract of land described as Lot 7, Hoover's Addition; and immediately west of Lot 7 are lots described as Lots 4, 5 and 6, in Hoover's Addition. North of Lot 4 is Lot 3, which does not abut on Lot 7.

The defendants Joseph Whattoff, Vernard J. Whattoff and Donald J. Whattoff own Lots 3, 4, 5 and 6 above-described. All four defendants, which means the three last above-named and Murl L. Whattoff, hold title to Lot D and Lot 7. Lots 3, 4, 5 and 6 abut on Sheldon Avenue, a public street. They are improved by a store building with the part not occupied by the building made into a parking lot, all leased to Hyde & Vredenberg, Inc. The south 107 feet of Lot D and the south 107 feet of Lot 7, Hoover's Addition immediately adjoining on the west, are likewise now leased to the same firm, having also been made into a hard-surfaced parking lot. The north 85 feet of Lot D is improved by a dwelling house, leased by defendants to one Milton B. Dove, who occupies it and, apparently, uses the easement across plaintiffs' lot.

The situation, then, is this: the south 107 feet of Lots D and 7, and Lots 3, 4, 5 and 6, are made into a surfaced parking lot, except for that part of Lots 3 and 4 occupied by the Hyde & Vredenberg store. Since Lots 3, 4, 5 and 6 extend to and abut upon Sheldon Avenue on their west, it is plaintiffs' contention that defendants or their tenants may travel from Lot D across the parking lot to Sheldon Avenue, and so have a means of ingress and egress "otherwise" within the terms of the easement. Apparently Hyde & Vredenberg have not objected to the use of the parking lot by persons wishing to cross it, either to obtain access to Lot D or other properties lying east of it. In fact, it appears that the curbing along the parking lot on the east side of Lot D has been cut, by whom does not appear, so that the parking lot serves as a means of access to a church property and perhaps other lots lying to the east. It urged, however, that this use of the parking lot is merely at the sufferance of Hyde & Vredenberg, and this appears to be the fact. These facts, while perhaps not exactly stated in all particulars, are sufficiently accurate to show the practical situation as it exists and to illustrate the contentions of the opposing parties.

■ I. The plaintiffs concede that the grant made by their predecessor in title was of an easement appurtenant; but they say it must be construed according to the intention of the parties. With this we agree; but the intent must be that expressed in the grant itself, and we must look to its language for its

meaning. So stated, plaintiffs' argument defeats its purpose. The important language of the easement is that it "shall continue until other means of ingress and egress have been provided by the opening of street or streets *or otherwise* to the above land." (Italics supplied.) It is at once evident that the meaning of the words "or otherwise" is the key to the decision of this action. Plaintiffs think that the present means of access to Sheldon Avenue across the parking lot meets the requirements of the easement, and so terminate it. The easement is, of course, determinable upon the happening of the condition specified in the grant. But we think that condition has not yet been met.

Plaintiffs are here faced with the rule of ejusdem generis. This is a well-established rule of construction used to aid in ascertaining the meaning of written instruments. It is sometimes known as Lord Tenterden's Rule; and it means that "where an enumeration of specific things is followed by some more general word or phrase, such general word or phrase is to be held to refer to things of the same kind, as in the case of a 'clean-up' phrase, such as the term 'otherwise' with respect to a classification which immediately precedes it." 28 C. J. S., Ejusdem generis, pages 1049, 1050.

We have recently had occasion to use the rule in interpreting a statute making it a criminal offense to advertise fraudulently in a newspaper, or in the form of a book, circular, pamphlet, letter, "or in any other way." The defendant in State v. Cusick, 248 Iowa 1168, 1172, 84 N.W.2d 554, 556, was convicted of violation of this statute by means of telephone calls. After defining the rule of ejusdem generis and discussing it, we said: "We are convinced the rule * * * should be applied in the instant case. All the references in the statute apply to written advertisements. We cannot hold it has application to telephone calls * * *." We there applied the rule to the words in the statute "or in any other way", and reversed the conviction.

See also Bates v. American Trust & Savings Bank, 223 Iowa 729, 734, 273 N.W. 867, 869, and Brown v. J. H. Bell Co., 146 Iowa 89, 98, 123 N.W. 231, 234, 124 N.W. 901, 27 L. R. A., N. S., 407, Ann. Cas. 1912B 852.

It is readily apparent that the meaning of the rule as applied to the present case is that the means of ingress or egress

must be by something in the general nature of a "street or streets"; something of the same genus, of the same kind, as the things specifically named. Thus we might have an alley, or road, or other sort of highway. But a possible means of ingress and egress across a parking lot which must be traversed to reach a street some hundreds of feet away does not meet the terms on which the easement is determinable. A private parking lot is not of the same genus as a public street, and cannot be included within the meaning of the term "or otherwise." This conclusion is strengthened by the immediately following words "to the above land." Even without the application of the rule of ejusdem generis it would seem from the language used that the parties were contemplating the termination of the easement only when the dominant tenement should be reached by a public roadway "to the land."

■ II. Another insuperable obstacle to plaintiffs' claim appears in the fact that there is not an identity of ownership, as they assume. We have said above that Lot D, the dominant tenement, and Lot 7 of Hoover's Addition are owned by the four defendants named. But Lots 3, 4, 5 and 6, across which anyone must pass to gain access from Lot D to Sheldon Avenue, are owned by only three, Joseph, Vernard J. and Donald J. Whattoff. Murl L. Whattoff, the fourth defendant and who is a joint owner of Lot D, has no interest in Lots 3, 4, 5 and 6. We cannot say that he would have a perpetual right to pass across the lands owned by other parties, even though they are his co-owners of Lot D.

■ III. The question of the rights of the tenants to whom the store and parking lot are leased is also material. On January 2, 1951, Joseph, Vernard J. and Donald J. Whattoff leased to Hyde & Vredenberg, Inc., Lots 3, 4, 5 and 6, for a period of ten years. This lease is still in force and effect. No reservation of a right to cross the premises, either for themselves or others, was made by the lessors. Title to Lot D and to Lot 7 of Hoover's Addition was not obtained by the defendants until July 9, 1957, and it was on this date these lots were also leased to Hyde & Vredenberg. At least until the expiration of the lease covering Lots 3, 4, 5 and 6, across which or some part of which traffic

must pass to reach Sheldon Avenue from Lot D, such travel would be only at the sufferance of Hyde & Vredenberg, the lessees. No right to travel Lots 3, 4, 5 and 6 as a means of ingress and egress to and from Lot D now exists.

IV. The plaintiffs cite and rely much upon Wallace v. Bellamy, 199 N. C. 759, 762, 155 S.E. 856, 858. An easement had been reserved terminable as here quoted: "but the right of way shall cease and determine whenever the party of the first part shall open and establish streets or alleys extending from the Banks Channel to the Ocean, either to the north or south of the premises hereby conveyed." Streets were established which were not immediately adjacent to the land conveyed; the one on the north was 260 feet and that on the south 210 feet from it. But the court said the defendants had contended that it was necessary only that the streets opened should be adjoining their lots, or so near them as to be reasonably convenient for their use. This contention was submitted to the jury substantially as the defendants had made it; and the holding of the case is that the defendants therefore could not complain. It does not have any real bearing upon the issues before us here. We have examined the other authorities cited by the plaintiffs, but do not find them in point.—Affirmed.

All JUSTICES concur except GARRETT, J., who dissents from Division I.