SIOUX ASSOCIATES, INC., appellee, v. IOWA LIQUOR CONTROL COMMISSION et al., appellants.

No. 51469.

(Reported in 132 N.W.2d 421)

JANUARY 12, 1965.

Evan Hultman, Attorney General, William J. Yost, Assistant Attorney General, and Ray N. Berry, Assistant Woodbury County Attorney, for appellants.

George F. Davis and Dewie J. Gaul of Sifford, Wadden & Davis, of Sioux City, for appellee.

THORNTON, J.—Plaintiff seeks a declaration of the legality of its operation of its ballroom under the Iowa Liquor Control Act as amended by the Sixtieth General Assembly, effective July 4, 1963. Plaintiff is not a permit holder. Due to the zoning ordinance it cannot obtain a Class "B" beer permit and cannot qualify as a liquor license holder under the Liquor Control Act.

The statutes involved are section 123.42, Code of Iowa, 1962, as amended by the Sixtieth General Assembly, and section 30, chapter 114, Sixtieth General Assembly, now section 123.96.

Section 123.42, as amended is, in part:

"Consumption in public places—intoxication. It is hereby made unlawful for any person to use or consume any alcoholic liquors upon the public streets or highways, or in any public place except premises covered by a liquor control license, and no person shall be intoxicated nor simulate intoxication in a public place; * * *."

Section 30 of chapter 114 of the Sixtieth General Assembly added the following to chapter 123, Code of Iowa, 1962:

"It is unlawful for any person, firm, corporation, partnership, or association to allow the dispensing or consumption of intoxicating liquor or intoxicating beverages except sacramental wines and beer, in any establishment unless such establishments are licensed under this title.

"Provided, however, the provisions of this section shall not apply to bona fide conventions or meetings where mixed drinks are served to delegates or guests without cost. All other provisions of this chapter shall be applicable to such rooms. The provisions of this section shall have no application to occasional private social gatherings of friends or relatives in a private home or place."

Plaintiff's contention is it comes within the exception, that the operation of its ballroom is an occasional private social gathering of friends in a private place. The trial court so held and we agree.

Plaintiff operates an apartment building. In the building is a 50- by 90-foot ballroom. The rental of the ballroom is a substantial part of plaintiff's regular business. Its manager testified the income therefrom was 12½ percent of its net receipts. The ballroom is rented to various clubs and associations. The rental charge is $135 per night from 9 p.m. to 1 a.m.

Those who bring intoxicating liquor on the premises are members of dancing clubs. The dancing clubs were organized many years ago and have a well established membership. There is no question of subterfuge in this regard. See State v. Perry,

246 Iowa 861, 69 N.W.2d 412. Members bring their own liquor. The dance club, not plaintiff, arranges for mix and ice from a supplier. The mix and ice are served from a room included in the ballroom by a bartender employed by the dance club, not plaintiff. The usual charge made by the dance club to its members for mix and ice is 15¢ a setup to defray the cost. The club members mix their own drinks. Neither the dance club nor plaintiff serves mixed drinks or in anyway handles the liquor. The dance club arranges for the orchestra and makes its charge or determines the share of expense to its members. The dance club officers attend the door. There is no evidence anyone besides club members and their guests attend the dances or are admitted to the ballroom. All plaintiff furnishes is the ballroom, tables, chairs and glasses. Some eight to ten dance clubs each rent the ballroom six to eight times during the fall and winter months on irregular dates.

Defendants urge for reversal the exception should be strictly construed so as not to unduly encroach on the general statutory prohibition and contend the evidence falls short of showing plaintiff's operation comes within the exception within the meaning of the words "occasional", "friends" and "private place."

I. Of course the exception should not be so broadly construed as to nullify the general prohibition. Dingman v. City of Council Bluffs, 249 Iowa 1121, 1132, 90 N.W.2d 742; and Wood Brothers Thresher Co. v. Eicher, 231 Iowa 550, 562, 1 N.W.2d 655. In construing statutes the legislative intent is determined by what the legislature said, rather than what it should have said or might have said. See rule 344(f)13, Rules of Civil Procedure. Courts may not, under the guise of construction, extend, enlarge or otherwise change the terms of a statute. Bergeson v. Pesch, 254 Iowa 223, 227, 117 N.W.2d 431. The words in the statutes under consideration are in common use and should be given their commonly understood meaning. In re Trust of Highland Perpetual Maintenance Society, Inc., 254 Iowa 164, 169, 117 N.W.2d 57.

Consumption of liquor is prohibited in a public place except on premises covered by a liquor control license. Section 123.42,

Code of Iowa, 1962, as amended by the Sixtieth General Assembly.

Plaintiff is prohibited by section 30, chapter 114, Sixtieth General Assembly, from allowing the dispensing or consumption of intoxicating liquor in its establishment; the exception in section 30, contended for here, is "occasional social gatherings of friends in a private place."

II. Defendants contend the rule of ejusdem generis should be applied in construing the word "place" as it appears in section 30. The use is, "in a private home or place." Defendants urge "place" must not be construed broader than the word "home." The rule is inapplicable. As pointed out by the trial court, "private" should be applied to both "home" and "place." No one could read the exception and get the intention that "private" does not modify both "home" and "place." When so read we have "a private home or a private place." Both have similar and dissimilar qualities. If only the similar qualities were intended, the word "place" is surplusage.

The proper application of the rule of ejusdem generis is demonstrated and explained in State v. Wignall, 150 Iowa 650, 128 N.W. 935, 34 L. R. A., N. S., 507, cited by defendants and in Hewitt v. Whattoff, 251 Iowa 171, 100 N.W.2d 24. In the Wignall case the rule was applied to a statute making it a crime for "any express or railway company, or any common carrier, or person" to deliver liquor without a certificate. It was there held the meaning of the general word, "person," in that series should be limited to persons acting as private or common carriers, activities similar or like those specifically stated.

In Hewitt (page 175) we quote from 28 C. J. S., Ejusdem Generis, pages 1049, 1050:.

"Where an enumeration of specific things is followed by some more general word or phrase, such general word or phrase is to be held to refer to things of the same kind, as in the case of a 'clean-up' phrase, such as the term 'otherwise' with respect to a classification which immediately precedes it."

"Place" as here used is not a general or clean-up word. It is modified by "private" and refers to a "private place" as distinguished from a "private home."

■ III. Whether the ballroom as here used was a private place is determined by the type of use it was put to on the occasions in question. Certainly a public dance could be held there.

In Securities and Exchange Commission v. Sunbeam Gold Mines Co. (9 Cir.), 95 F.2d 699, 701, is this pertinent statement:

"To determine the distinction between 'public' and 'private' in any particular context, it is essential to examine the circumstances under which the distinction is sought to be established and to consider the purposes sought to be achieved by such distinction."

Section 123.5(19) of the Liquor Control Act defines "public place" as follows: " 'Public place' includes any place, building or conveyance to which the public has or is permitted to have access and any place of public resort."

It goes without saying a private place is the opposite—one to which the public does not have and is not permitted to have access and is not a place of public resort.

What this court said in State v. Perry, 246 Iowa 861, 867, 69 N.W.2d 412, 416, points up the situation:

"To admit perfect strangers to a clubroom upon the payment of a one-dollar fee and no other requirement, qualification or identification, clearly falls short of proof, even inferentially, that such a place was private."

So long as the clubs renting plaintiff's ballroom restricted the attendance to their members and their guests as shown here the ballroom is a private place. Likewise the gathering is private when the attendance is so restricted.

■ IV. Defendants urge plaintiff's operation is not an occasional gathering of friends or relatives, but a regular and continuous operation and not within the exception. If this construction of the statute is accepted the exception provided could not be effective in a private place outside of a private home. It could hardly be assumed the group holding the gathering would own or have available a "private place" for any gathering for a group large enough to have outside of a private home. Some clubs, of course do, and such are often available to others for either private or public use. "Occasional" as used here is an adjective modifying "private social gatherings." It does not refer to plain-

tiff. Plaintiff is the one referred to in the first paragraph of section 30 who is prohibited from allowing the dispensing or consumption of liquor in any establishment. Under this record it has no part in the gathering except furnishing the ballroom. There is nothing in section 30, in either the prohibition or the exception, that fairly leads to the conclusion that under these facts the legislature intended the word "occasional" to constitute a restriction on the landlord. If this ballroom was rented for successive wedding receptions or birthday parties, each event would be occasional for the tenant but a regular part of the landlord's business.

In the New American Webster Handy College Dictionary it is briefly defined, "1, occurring now and then; 2, incidental." "Occasion" as a noun is there defined, "1, a special event, ceremony, * * *; 5, a particular time; the time of a special happening."

In Webster's Third New International Dictionary, unabridged, "occasional" as an adjective is defined, "1: occurring or operating on a particular occasion * * * 4: met with, appearing, or occurring irregularly and according to no fixed or certain scheme."

Surely any special event, e.g., a wedding reception, is an occasional event. Likewise an anniversary party, though it occurs regularly each year, though usually not part of a plan or scheme.

Court definitions differ widely. In Biermann v. Guaranty Mutual Life Ins. Co., 142 Iowa 341, 346, 120 N.W. 963, 965, this court at an earlier date said of the statement, "a glass of beer occasionally" in an application for insurance: "* * * an 'occasional' glass of beer may mean anything from a glass once a month to one every fifteen minutes, according to the capacity of the individual, or, perhaps, according to the 'liberality' of his views."

Defendants cite authority holding five sales in a year operated to exclude a business from the occasional sales exceptions in California sales tax law. Pacific Pipeline Construction Co. v. State Board of Equalization, 49 Cal.2d 729, 321 P.2d 729. A reading of this case points out the business character of these

sales. Numerous definitions of "occasional" and "occasion" are found in Volume 29, Words and Phrases, and pocket parts. They do not differ materially from the dictionary definitions.

The gatherings here are irregular. No set pattern or plan is followed. They occur on the occasion of the club having a dance. They could as well be any event. There is nothing in this record to suggest a subterfuge to violate the liquor laws either by plaintiff or the dance clubs. Simply, the gatherings are occasional.

V. The evidence shows those attending the dances are all members of the club holding the dance or the guests of such members. "Friend" is defined in Webster's Third New International Dictionary as, "1a: one that seeks the society or welfare of another whom he holds in affection, respect or esteem or whose companionship and personality are pleasurable." Synonyms are "acquaintance", "intimate" and "confidant." The members of the clubs are friends, even though club officers check them at the door.

VI. This action is in equity. Plaintiff sought and was granted a temporary injunction. On final hearing the trial court properly refused to permanently enjoin defendants. The operation of plaintiff, confined to the facts in evidence, is not illegal, and comes within the exception.—Affirmed.

LARSON, PETERSON, SNELL, MOORE and STUART, JJ., concur.

THOMPSON, J., and GARFIELD, C. J., dissent.

HAYS, J., takes no part.

THOMPSON, J. (dissenting)—I am unable to agree with the legalistic legerdemain by which the majority converts a commercial dance hall, regularly operated for substantial profit, into a "private home or place"; and likewise construes the holding of regular dances several times each year to be merely "occasional private social gatherings of friends or relatives." The holding of the majority, and the reasoning by which it is reached, appear to me to fly in the face of common knowledge and of common sense.

The meaning and application of the words "private home or

place" are discussed in the dissent in Carey v. Iowa Liquor Control Commission, 257 Iowa 245, 132 N.W.2d 429, and will not be repeated here. It will suffice to say that I think the same reasoning on this point is applicable to both cases.

I. Plaintiff's action is in equity. It is in the form of a declaratory-judgment proceeding; it avers that it has no adequate remedy at law; and it asks "such other and further equitable relief as may be just and proper in the premises." I doubt this construction of the action is, or will be, challenged. Its significance lies in the point that we are not bound by the findings of fact of the trial court, but should make our own evaluation of them.

II. It is well settled that an exception to a statute enacted for the public benefit is to be construed most strongly against those who claim rights under it. Those who claim under the exception must show that they come both within the words and the reason thereof. Wood Brothers Thresher Co. v. Eicher, 231 Iowa 550, 562, 563, 1 N.W.2d 655, 661; Hawkeye Portland Cement Co. v. Chicago, R. I. & P. Ry. Co., 198 Iowa 1250, 1255, 201 N.W. 16, 19. It can hardly be denied that the part of section 30 of the Iowa Liquor Control Act enacted by the Sixtieth General Assembly, and which the plaintiff relies upon here to shield its operations, is an exception to the general provisions of the section. First, the section makes it unlawful to allow the dispensing or consumption of intoxicating beverages in any establishment which does not have a liquor license; and then, as an exception, says the general provision shall have no application "to occasional private social gatherings of friends or relatives in a private home or place."

While there are without doubt those who disagree that the Iowa liquor-by-the-drink Act, as passed by the Sixtieth General Assembly, is in fact conducive to the public benefit or welfare, we must accept such purpose as being the intent of the legislature. Within the rule first above stated in this division, it was therefore incumbent upon the plaintiff to show that it comes within the exception; and we must construe it "most strongly" against it, and in favor of the public. Addressing this dissent to the question of the meaning of the words "occasional private

social gatherings", I think that in this endeavor it has entirely failed.

III. It seems clearly to have been the intention of the legislature to except "occasional" private gatherings of friends or relatives, or both, in private homes, or similar places, such as hotel or motel rooms. But that it intended to license the repeated consumption of liquor at regular affairs in commercial ballrooms or similar business places conducted for profit I am unable to believe. The language of the exception does not so indicate; and we should take the legislature at what it said, rather than what it might have said, or what we think it should have said, or what individual members of the lawmaking body say they thought they were saying.

I have no quarrel with the majority's illustration of a wedding party as an "occasional" gathering. With some exceptions in certain localities and among certain people, a wedding is indeed occasional rather than regular. But I fail to see how this aids the plaintiff or supports the majority's conclusion. Nor does the case cited, Biermann v. Guaranty Mutual Life Insurance Co., 142 Iowa 341, 346, 120 N.W. 963, 965, throw any light on the question or aid the majority. The real holding of that case is that knowledge of the insured's drinking habits by the agent who wrote the policy was imputed to the insurer, and if the jury found such knowledge, falsity of the representations was no defense. I quote: "It must therefore be held under the finding of the jury that, if the representations made in the application were false, the falsity was known to the defendant when the policy was issued. Under such circumstances, the fact that the warranty was broken when made constitutes no defense."

The majority properly states the definitions of the word "occasional" from Webster's Third New International Dictionary: "1: occurring or operating on a particular occasion * * * 4: met with, appearing, or occurring irregularly and according to no fixed or certain scheme." Webster's Intercollegiate Dictionary defines the word as "occurring now and then; incidental." In general, it is the antonym of "regular"; Palle v. Industrial Commission, 79 Utah 47, 7 P.2d 284, 291, 81 A. L. R. 1222.

IV. We proceed then to an examination of the record. In passing, it is noticed that the plaintiff says it is unable to secure a liquor license because of zoning ordinances; an unfortunate circumstance, but one which does not authorize the courts to relieve its dilemma by a strained construction of statutory law; in effect, for plaintiff's purposes, to license the unlicensed.

The plaintiff pleads that it rents the ballroom about twenty or thirty times each year to tenants in the building for private parties. In addition it is leased to the B'Nai B'rith, high school graduating classes, veterans' organizations and voluntary associations of persons forming dancing clubs. The record shows that the net income from the dance hall is from $3500 to $3700 per year; gross income about $4000. This furnishes about 12½ percent of the total income of the plaintiff from the entire building, which is otherwise devoted to apartments. The ballroom seats from 200 to 300 persons. The plaintiff furnishes glasses for use of the parties in mixing and drinking the liquor which they bring.

It is evident that the operation of this facility is something more than occasional. It is a commercial moneymaking place, used regularly by various organizations. But the majority thinks the word "occasional" applies only to those using the hall and not to the plaintiff. However that may be, it seems clear that the consumption of intoxicating liquor may not be permitted by the owner of the establishment unless the meetings are themselves "occasional".

But Mr. Weldon Coe, the resident manager of the building, testified that "some of these organizations have rented it once a month; some of them twice a month." Again he said "I have had clubs use these premises on the first Saturday in the month and the last Saturday in the month. The clubs ordinarily meet between the last of September and the last part of May. Dance dates are arranged ahead in the Grandy-Pratt office with Mr. McHugh. In the period of seven years, clubs have not met on precisely the same date."

Apparently the dance clubs, at least, sign leases for the use of the ballroom for some time ahead. This inference comes from the testimony of Hugh McHugh, who was associated with the

real-estate firm which had general charge of the building. He said: "None of the dance clubs have signed leases for next year, and have all notified me they will not sign a lease unless they are allowed to bring liquor, their own personal bottles, in the ball-room."

This paints a picture of a dance hall regularly used by several groups. While they do not always meet on the same dates, they do meet regularly on some dates. Some of the lessees, probably the dance clubs, use the room once a month, some twice. They sign leases in advance. This is something more than incidental; it is a fixed and regular series of meetings by these organizations. Is it any less "regular" because the meeting dates are not always the same? The signing of leases for coming years in itself implies a regularity, an assurance of meetings during the period of the lease. The whole record shows the operation of the dance hall as a commercial moneymaking project; it shows meetings regularly held by various organizations each year, some several times during the year; and it shows that some of them at least operate under written leases which we must assume fix the dates upon which the room is available to them. As the Colorado Supreme Court said in Public Utilities Commission v. Watson, 138 Colo. 108, 113, 330 P.2d 138, 141, "there is nothing obscure or mysterious about the word 'occasional' * * *". In Bankers & Shippers Ins. Co. of New York v. Blackwell, 260 Ala. 463, 468, 71 So.2d 267, 270, the Alabama Supreme Court quoted with approval this definition from Webster's New International Dictionary (Second Ed.): "*Casual,* occasional; coming without regularity; incidental." "*Occasional,* occurring at irregular intervals; infrequent." "*Regular*, steady or uniform in course, practice or occurrence."

We are here the judges of the facts. There was no factual dispute in the evidence, so that the general rule that we give weight to the findings of the trial court has no significance. The question is not which evidence is true, but what are the proper inferences to be drawn from undisputed evidence? The plaintiff's case must rest entirely upon the fact that the various organizations do not meet at exactly the same dates or on fixed schedules. But they do meet regularly each year on some dates;

they meet once or twice each month; and some of them in accordance with written leases.

The purpose of the dancing clubs is to dance. Some of them have been organized, and dancing, for many years, none for less than 15 years. It should not be possible to say that their meetings are not regular, but are casual, or incidental, or occasional. The parties held by residents in the apartment building may indeed be occasional; but the other organizations we know have regular meetings, even though not always on the same dates. If the meetings of any of these in the ballroom are merely occasional, the record does not so show. Mr. McHugh testified: "The only function of the ballroom is for the clubs and the four or five other organizations that we have leased it to."

We must assume that the beneficial purpose of the lawmakers was to afford a greater intimacy with John Barleycorn by making his wares more readily available to the citizenry; very likely in the interest of "gracious living." It is not for us to say whether this purpose was laudable or otherwise; policy making, in Iowa at least, is still for the legislative body rather than for the courts. But equally it is not for us to extend the policy by a strained construction of the statutes nor to situations not justified by a fair evaluation of the evidence and a proper construction of the statute.

I am unable to agree that the plaintiff has carried the not inconsiderable burden of showing itself within the fair meaning of the exception to the general provisions of section 30.

V. The question whether the dance hall leased by the plaintiff to these groups is a "private place" within the meaning of the statute and the application of the rule of ejusdem generis is discussed fully in the dissent in Carey v. Iowa Liquor Control Commission, 257 Iowa 245, 132 N.W.2d 429, and need not be repeated here. It is evident, however, that the rule governs the situation here as well as in the Carey case. A commercial ballroom does not have the characteristics of a "private home" and so is not a "place" as the term is used in the statute.

I would reverse.

GARFIELD, C. J., joins in this dissent.