ARLO BECKER, SR., et al., appellants, v. BOARD OF EDUCATION OF BENTON COUNTY et al., appellees.

No. 51766.

(Reported in 138 N.W.2d 909)

DECEMBER 14, 1965.

Fisher & Pickens, of Cedar Rapids, for appellants.

Bordewick, Fischer & Fischer, of Vinton, for appellees Consolidated School Districts of Van Horne, Blairstown, Keystone and Newhall.

Keith Mossman, of Vinton, Benton County Attorney, for Board of Education of Benton County and Floyd L. Ellson, Superintendent of Schools of Benton County.

MOORE, J.—This is an action in certiorari by electors of the Consolidated School District of Newhall to test the legality of the formation of the school districts of Van Horne, Blairstown, Keystone and Newhall into a reorganized district now known as Benton Community School District, under the provisions of chapter 275, Code, 1962. Following trial the writ was annulled

and plaintiffs' petition dismissed. They have appealed under rule 318, Rules of Civil Procedure. We approve the trial court's order.

Plaintiffs' petition alleged over 20 errors in the reorganization proceedings. None was established according to the trial court's detailed findings and conclusions. The scope of this appeal, however, is limited to the assigned errors of the trial court in holding (1) the average daily attendance classification in section 275.20 is constitutional, and (2) there was no unconstitutional delegation of legislative power.

Beginning in October 1957 many joint planning meetings of the county boards of education of Benton, Iowa, Tama and Poweshiek Counties were held which resulted in adoption of a tentative joint county plan. It was approved by the state superintendent of public instruction. Careful study, meetings of citizens committees and the boards, and straw votes led to a decision by the joint boards to adopt a plan and submit it to the voters. The plan was submitted to and approved by the state superintendent of public instruction.

The first election involving formation of the Blairstown, Keystone, Newhall and Van Horne consolidated school districts into a reorganized district to be known as Benton Community School District was held February 14, 1963. Blairstown and Newhall voted down the proposition and it was rejected.

Planning by the joint boards continued. They obtained the assistance and advice of Doctor Knutson of Cedar Falls, a recognized expert in the field of education and school reorganization.

After the first election the Newhall board met with its citizens committee and decided not to continue planning with the other three boards. This met with no opposition and the other boards continued their meetings and planning. Soon thereafter, however, a petition was circulated in the Newhall district asking its board to again join in planning with the other three boards. The petition was signed by about 62 percent of the Newhall electors, including some of the plaintiffs. The Newhall board then resumed planning with the others.

On June 24, 1963, the four boards voted to circulate formal petitions for a second election. On October 14, 1963, petitions

were filed with the Benton County superintendent of schools. They bore the required number of signatures of electors from each of the four districts together with affidavits as required by sections 275.12 and 275.13, Code, 1962. Some objections were filed and considered at a properly called meeting of the joint boards. The joint boards decided to remove certain sections of the Newhall district from the reorganization plan so they could join the Vinton district to the north. All other objections were overruled. A petition calling for an appeal to the state superintendent of public instruction was thereafter filed with the Newhall board. Such an appeal was taken. On January 24, 1964, the state superintendent approved the reorganization. He found the proposal was sound, it had the capabilities to provide an educational program superior to that then available, the district was well constituted, the proposed enrollment would be approximately 1500 pupils and the financial resources were adequate. Newhall did not appeal this ruling to the district court.

Pursuant to proper preliminary steps and notice the election was held on March 10, 1964. The tabulation of the election results is as follows:

| District | Yes | No | Total |
|----------|-----|-----|-------|
| Blairstown | 310 | 232 | 542 |
| Van Horne | 351 | 133 | 484 |
| Keystone | 285 | 207 | 492 |
| Newhall | 186 | 320 | 506 |
| | 1132 | 892 | 2024 |

Section 275.20, as pertinent here, provides: "* * * If the proposition receives a majority of the votes cast in each of at least seventy-five percent of the said districts, and also a majority of the total number of votes cast in all of said districts, the proposition shall be deemed carried. Provided, however, that if two or more of the school districts affected have a resident average daily attendance in public schools of three hundred or more pupils who were enrolled in public schools in the preceding school year, the proposition must also receive a majority of the votes cast in each of said districts in order to be deemed carried, and in such districts the entire existing district shall vote."

The official school records for the 1962-63 school year show the average daily attendance for Blairstown was 390.5, Van Horne 326.0, Keystone 415.0 and Newhall 297.07.

Applying the election returns to the provisions of section 275.20 it is clear a majority vote was cast in 75 percent of the districts and that each district having a resident average daily attendance of 300 or more pupils voted for the proposition. Newhall did not so vote but a favorable vote was not required as its resident average daily attendance was under 300. The election was declared carried.

Plaintiffs' petition for a writ of certiorari was filed April 2, 1964. The writ was ordered and issued on April 23. On April 10 the election of Benton Community School District directors was held and on April 13 the new board met and elected a president.

Appellees first argue quo warranto is the exclusive remedy to test the legality of the school district organization after the board and its president had been elected. Appellants point out their petition was filed before such elections.

The entire controversy was tried and submitted to the trial court as a certiorari action. It was tried as an ordinary action at law. We prefer to decide the case upon the merits in the form submitted to the trial court. Accordingly we make no pronouncement upon the question of the form of action.

On trial of the many issues appellants attempted to impeach the Newhall school record in regard to the resident average daily attendance by other evidence. The trial court found that assuming appellants' claimed errors were proven the figure would not exceed 297.46. Appellants do not argue this finding is erroneous but make their sole attack on the constitutionality of section 275.20.

Appellants contend the average daily attendance classification in section 275.20 violates Amendment 14 to the Constitution of the United States and Article I, section 6, of the Iowa Constitution.

Section 6 provides: "All laws of a general nature shall have a uniform operation; the General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms shall not equally belong to all citizens."

The material part of Amendment 14 to the Constitution of the United States provides: "No State shall make or enforce any law which shall * * * deny to any person within its jurisdiction the equal protection of the laws."

The federal court cases establish the general rule that the equal protection clause of Amendment 14 does not take from the State the power to classify in the adoption of public laws, but permits the exercise of a wide scope of discretion in that regard. Legislation will be held void only when it is without reasonable basis and therefore purely arbitrary. The equal protection clause goes no further than to prohibit invidious discrimination. Smith v. Cahoon, 283 U. S. 553, 51 S. Ct. 582, 75 L. Ed. 1264; Hartford Steam Boiler Inspection & Ins. Co. v. Harrison, 301 U. S. 459, 57 S. Ct. 838, 81 L. Ed. 1223; Morey v. Doud, 354 U. S. 457, 77 S. Ct. 1344, 1 L. Ed.2d 1485; McLaughlin v. State of Florida, 379 U. S. 184, 85 S. Ct. 283, 13 L. Ed.2d 222; Carrington v. Rash, 380 U. S. 89, 85 S. Ct. 775, 13 L. Ed.2d 675.

This court has adopted and consistently applied the same general rule. Dunahoo v. Huber, 185 Iowa 753, 171 N.W. 123; State ex rel. Welsh v. Darling, 216 Iowa 553, 246 N.W. 390, 88 A. L. R. 218; Dickinson v. Porter, 240 Iowa 393, 35 N.W.2d 66 (appeal dismissed 338 U. S. 843, 70 S. Ct. 88, 94 L. Ed. 515); Sperry & Hutchinson Co. v. Hoegh, 246 Iowa 9, 65 N.W.2d 410; Steinberg-Baum & Co. v. Countryman, 247 Iowa 923, 77 N.W.2d 15; Diamond Auto Sales, Inc. v. Erbe, 251 Iowa 1330, 105 N.W. 2d 650; Chicago & N.W. Ry. Co. v. Fachman, 255 Iowa 989, 125 N.W.2d 210.

In Collins v. State Board of Social Welfare, 248 Iowa 369, 375, 81 N.W.2d 4, 7, we said: "The general rule is that if there is any reasonable ground for the classification and it operates equally upon all within the same class, there is uniformity in the constitutional sense."

We need not consider the two constitutional provisions separately since the effect of Article I, section 6, of our state constitution is substantially the same as the equal protection clause of Amendment 14 and if a statute does not offend against one of these provisions it is inoffensive to the other. Berg v. Berg, 221

Iowa 326, 331, 332, 264 N.W. 821, 824, and citations; Dickinson v. Porter, supra, 240 Iowa 393, 400, 35 N.W.2d 66, 72, and citations. See also 16A C. J. S., Constitutional Law, section 502, page 300.

Section 275.20 is presumed to be constitutional. The General Assembly has power to enact any legislation it sees fit provided it is not clearly and plainly prohibited by some constitutional provision. It is appellants' burden to negative every conceivable basis which may support this Act. It is not our province to pass upon the policy, wisdom, advisability or justice of a statute. Dickinson v. Porter, supra; Knorr v. Beardsley, 240 Iowa 828, 839, 840, 38 N.W.2d 236, 243; Steinberg-Baum & Co. v. Countryman, supra, 247 Iowa 923, 929, 77 N.W.2d 15, 18; Spurbeck v. Statton, 252 Iowa 279, 283, 284, 106 N.W.2d 660, 663, and citations.

Appellants argue the average daily attendance classification in section 275.20 is unreasonable and arbitrary and therefore the statute is unconstitutional. They point out that if the classification had been based upon average daily membership or enrollment the majorities in the other three districts would not have been able to impose their will on the Newhall district. The record shows the average enrollment of Newhall was 320. Appellants further argue a few key absences caused perhaps by an influenza epidemic could easily put the average daily attendance below 300. No such epidemic in the Newhall district is shown.

These arguments lose sight of the fact that if average daily membership or enrollment classification had been used, the legislature might well have required a larger figure. It does not seem unreasonable to conclude the 300 figure was selected because of the classification used and that absence because of illness was considered.

No doubt the legislature could have used some other classification but that does not render the average daily attendance one unreasonable or arbitrary. It operates equally upon all those within the established class.

Code section 275.1 states: "Declaration of policy—surveys. It is hereby declared to be the policy of the state to encourage the reorganization of school districts into such units as are neces-

sary, economical and efficient and which will insure an equal opportunity to all children of the state. * * *."

Promotion of the educational policy required the legislature to set some standard or classification. Section 275.20 itself sets the classification and thus this case is distinguishable from Lewis Consolidated School District v. Johnston, 256 Iowa 236, 127 N.W.2d 118, which is cited and quoted from by appellants. There the standards were set by the state superintendent of public instruction and for that reason we declared the statute permitting such procedure to be unconstitutional.

Appellants have failed to meet their burden to prove the legislative classification in section 275.20 is unreasonable or arbitrary and that the statute is unconstitutional. The classification is within the purpose of chapter 275.

█ Appellants' second assigned error contends there was an unconstitutional delegation of legislative power to the state superintendent of public instruction. We find no delegation of power to the state superintendent authorizing him to construe the meaning of "average daily attendance" as used in section 275.20. The record does, however, disclose he included in the instruction to school administrators a definition of the phrase.

Standard 15 of the department of public instruction states: "Average Daily Attendance Defined. Average daily attendance shall be defined as that average obtained by dividing the aggregate days of attendance for the school year by the number of days school was in session. If school was in session 179 days and dismissed one day for county institute, the average daily attendance shall be computed by dividing the aggregate days of attendance for the 179 days by 179."

This definition attempts in no way to change or alter the clear meaning of the phrase. The state superintendent, apparently as information and for uniformity in all districts, merely states the clear and unambiguous meaning of the phrase contained in the statute.

█ Where, as here, the language of a statute is plain and unambiguous we apply no statutory rules of construction and make no search for meaning beyond the statute. Herman v. Muhs, 256 Iowa 38, 40, 126 N.W.2d 400, 401, and citations;

Consolidated Freightways Corp. of Delaware v. Nicholas, 258 Iowa 115, 137 N.W.2d 900. It is our duty to give statutory words in common use their commonly understood meaning. In re Trust of Highland Perpetual Maintenance Soc., 254 Iowa 164, 172, 117 N.W.2d 57, 61, and citations; Sioux Associates, Inc. v. Iowa Liquor Control Comm., 257 Iowa 308, 311, 132 N.W.2d 421, 424. We find no conflict in the meaning of the statutory phrase and the definition applied by the state superintendent.

While not controlling, it is interesting to note our legislature at one time defined the meaning of average daily attendance as: " 'Average daily attendance' means the quotient arising from dividing aggregate attendance by the total number of days school was in session during the regular school year, excluding summer school. Said quotient shall be carried to such number of decimal places, fixed by the superintendent, as is reasonably necessary to secure equitable distribution." Section 283.1(2), Code, 1958. Chapter 283, Code, 1958, relating to distribution of federal funds, was repealed by chapter 197, Acts of the Fifty-eighth General Assembly, and the definition has no application to section 275.20, Code, 1962. It does, however, show what the legislature then meant by average daily attendance. That definition is the same as the clear meaning of section 275.20.

We conclude section 275.20 is not unconstitutional in either respect asserted by plaintiffs.—Affirmed.

All JUSTICES concur.