Argued September 5, reversed September 25, 1968

# STATE BOARD OF EDUCATION, *Appellant,*
## *v.* FASOLD, *Respondent.*
445 P. 2d 489

*Gerard K. Drummond,* Portland, argued the cause for appellant. With him on the briefs were Rives & Schwab and Herbert M. Schwab, Portland.

*Peter S. Herman,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief was Robert Y. Thornton, Attorney General, Salem.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

SLOAN, J.

The State Board of Education seeks declaratory determination of its power to adopt rules governing the common schools of the state. The Superintendent denies the board's authority and seeks a declaration that the Constitution of Oregon vests in him alone the full authority to administer the state common school system. The trial court held that Article VIII, § 1 of the Oregon Constitution vested the duty of supervision in the Superintendent of Public Instruction. We reverse.

The following admitted facts and issues presented are taken, substantially, from the Board's brief:

"The State Board of Education ('Board') consists of seven members appointed by the Governor and charged with certain statutory duties under ORS Chapter 326 which, in general, encompass the establishment of policies for the administration and operation of public schools in the state of Oregon

within the guidelines prescribed by the Legislature. These duties include the duty of establishing 'state standards for public schools,' and the adoption of 'rules for the general government of public schools.' ORS 326.051.

"* * * * *

"Article VIII, § 1[①] of the Oregon Constitution provides that it '* * * shall be competent for the Legislative Assembly to * * * prescribe [the Superintendent's] powers and duties; * * *' Among the duties of the Superintendent prescribed by the Legislature is the duty of supervising public school officers and public schools under the direction and pursuant to policies established by the Board, and the duty to 'act as administrative officer of the State Board of Education.' ORS 326.310(1).

"The Board has promulgated rules and regulations governing the administration of the public schools of the State of Oregon. Included within those rules and regulations are certain prescribed minimum standards for public schools. Prior to February 13, 1968, the Superintendent has recommended rules and regulations for adoption by the Board and he has enforced those rules and regulations which have been adopted by the Board, including rules and regulations prescribing minimum standards for public schools.

"On or about February 13, 1968, the Board informed the Superintendent that a change in the rules and regulations prescribing minimum stand-

---

[①] The full text of Section 1 reads: "The Governor shall be superintendent of public instruction, and his powers, and duties in that capacity shall be such as may be prescribed by law; but after the term of five years from the adoption of this Constitution, it shall be competent for the Legislative Assembly to provide by law for the election of a superintendent, to provide for his compensation, and prescribe his powers and duties.—"

Of greater significance, however, is Section 3 of Article VIII which provides:

"The Legislative Assembly shall provide by law for the establishment of a uniform, and general system of Common schools."

ards for public schools would be made to increase the average class load per teacher standards from 25 pupils per teacher to 28 pupils per teacher in grades one through three and from 30 pupils per teacher to 33 pupils per teacher in grades four through eight. The Superintendent informed the Board that he would not consider himself bound to implement and follow such revised standards promulgated by the Board, claiming that the authority to fix such standards was vested in him and not in the Board.

"Since a school district failing to meet the standards prescribed by the Board is in danger of losing its support from the Basic School Support Fund (ORS 327.006(8) and 327.103) which support is a large part of the budget of every school district, this conflict between the Board and the Superintendent is of vital concern to all school districts.

"The refusal by the Superintendent to implement rules and regulations prescribed by the Board pursuant to specific statutory authority brings to a head a controversy between the Superintendent and the Board as to which is charged with rulemaking powers with respect to public education in the state of Oregon. The statutes clearly place the rule-making power in the hands of the Board and place the Superintendent in the position of an administrator or executive officer charged with implementing and enforcing the rules and regulations prescribed by the Board.

"The Superintendent challenges the validity of the statutes on constitutional grounds, claiming that the constitutional provision (Article VIII, § 1) requiring his election by the people also requires the Legislature to place the rule-making power in his hands, within statutory standards, rather than in the hands of an appointed administrative board.

"The Decree of the court below sustained the Superintendent's contentions and declared uncon-

stitutional ORS 326.011, 326.051 and 326.310.
* * * *."

The Superintendent concedes that the legislature has the power to delegate the responsibility of fixing the number of pupils per teacher to an administrative agent. He insists, however, that because he is named in the constitution that he is the only person to whom the legislature can delegate such authority. The Superintendent cites several cases from other states which he claims support his contention. It is our view that

the provisions of our constitution and the literally uncontrolled power of the legislature to provide for, regulate and administer the public school system dilutes the authority of decisions from other states.

██ It is apparent from the proceedings of the Oregon Constitutional Convention that the only reason a Superintendent of Public Instruction is mentioned in that document was for the purpose of saving money by merging the duties of that kind of an office with the office of governor. Carey, A History of the Oregon Constitution; Lewis, Education in the Oregon Constitutional Convention of 1857, 23-24 Oregon Historical Society Quarterly, 1922-23, p 220. Mr. Lewis reports that there was little dissent in the convention for the need of a state organized system of common school education with full authority and responsibility placed with the legislature. This power is a sovereign, plenary one, its only limitation being that it be uniformly exercised and that no special or local law can be passed respecting support for the common schools and for the preservation of school funds. Article IV, § 23, Oregon Constitution; *Harris v. Burr*, 1898, 32 Or 348, 52 P 17, 39 LRA 768; *Campbell et al v. Aldrich et al*, 1938, 159 Or 208, 79 P2d 257; *Monaghan v. School District*

*No. 1,* 1957, 211 Or 360, 315 P2d 797.[2] There is no intimation in the constitutional history or in the many decisions of this court sustaining the legislative authority relative to schools that the legislature is restricted in its choice of placing this delegated authority.

When we remember also that "The legislature of this state is invested with legislative power to the fullest extent, except so far as limited expressly or by necessary implication in the Constitution of the state and of the United States, and in considering the constitutionality of an act of the legislature, the question is not as to the extent of the power that has been delegated by the people to the legislative assembly, but as to the extent of limitations imposed upon such body."[3], then we find no doubt of the legislature's au-

---

[2] The rule expressed is common not only to Oregon but is uniformly followed. It was recently stated in Garber and Reutter, The Yearbook of School Law, 1967, The State and Educational Administration, p 12:

"The legislature then is a free agent and may enact any law relating to education that it desires unless specifically prohibited from so doing by the constitution. In the exercise of its authority, it may create whatever educational machinery it wishes and delegate to the agencies it creates whatever powers it deems proper, within certain limitations to be noted later."

The limitations mentioned are unimportant to the decision in this case. For similar pronouncements see the Yearbooks of School Law for prior years.

[3] State v. School District No. 3, 1915, 78 Or 188, 192, 193, 152 P 221, 222; The Supreme Court of Iowa, in Becker v. Board of Education of Benton County, 1965, 258 Iowa 277, 283, 138 NW2d 909, at 912, has concisely expressed this power of the state legislative assembly and the burden of one who challenges its acts as follows:

"The General Assembly has power to enact any legislation it sees fit provided it is not clearly and plainly prohibited by some constitutional provision. It is appellants' burden to negative every conceivable basis which may support this Act. * * *."

thority to create and empower the State Board of Education.

■■ We conclude, therefore, that the constitutional creation of the title of Superintendent of Public Instruction is not a limitation or prohibition on the power of the legislature to create the Board of Education and that the Board had the authority to adopt and enforce the challenged rule.

Reversed.